UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(MIAMI)

**CASE NO. 1:20-cv-23402**

PINNACLE THREE CORPORATION, and
LEON GOLDSTEIN,

    Plaintiffs,

v.

OLEG FIRER, IGOR "GARY" GELMAN, and
STAR EQUITIES, LLC

    Defendants.
_____/

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND
INCORPORATED MEMORANDUM OF LAW**

    Defendants OLEG FIRER ("Firer"), IGOR "GARY" GELMAN ("Gelman"), and STAR EQUITIES, LLC ("Star Equities") (collectively "Defendants"), by and through their undersigned counsel, hereby file this Motion to Dismiss Plaintiffs' Complaint and Incorporated Memorandum of Law (the "Motion"), pursuant Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6), and in support, state as follows:

**INTRODUCTION**

    This case, which is similar to an alleged related case, is an improper attempt to rewrite history. Defendants vigorously dispute the allegations contained within Plaintiffs' Complaint, which suffers from numerous defects.

    ***First***, the allegations with respect to the relationship between Plaintiffs Leon Goldstein ("Goldstein") and Pinnacle Three Corporation, a Florida Corporation ("Pinnacle") (collectively "Plaintiffs") are contradictory and show that at least one (or both) of the Plaintiffs lack any standing

1

to bring the claims alleged in the Complaint. **Second**, Plaintiffs' claim for violation of Rule 10b-5 (Count I) should be dismissed because, among other things, Plaintiffs' claim is barred by the statute of limitations. **Third**, Plaintiffs' claim for liability of controlling persons under 15 U.S.C. § 78t (Count II) should be dismissed because the Complaint fails to allege any primary violation, as well as being conclusory and vague. **Fourth**, Plaintiffs' claim for violating Florida's Securities Investor Protection Act (Fla. Stat. § 517) (Count III) should be dismissed because, among other things, the claim is barred by the statute of limitations. **Fifth,** Plaintiffs' claim for violating Fla. Stat. § 501.203 (Count IV) should be dismissed because Plaintiffs' Complaint relies on conclusory statements and fails to make allegations with the required substance and particularity. **Sixth,** Plaintiffs' claims for fraudulent misrepresentation (Count V) is conclusorily pleaded and lacks the requisite particularity to plead a fraudulent claim. Accordingly, the Complaint should be dismissed.

## ALLEGATIONS IN THE COMPLAINT

Defendants dispute the allegations in the Complaint and the Complaint's own exhibits indicate the implausibility and lack of veracity in Plaintiffs' allegations.

Plaintiffs allege that Firer was Pinnacle's corporate secretary in 2017. (ECF No. 1 ¶ 3). Plaintiffs do not identify Goldstein's relationship to Pinnacle in 2017. *Id.* Despite failing to allege the relationship between Goldstein and Pinnacle in 2017, Plaintiffs allege that in November 2017, Gelman and Firer allegedly approached Pinnacle, through *Goldstein*, for the purpose of raising monies for an investment opportunity. *Id.* ¶ 10. The investment opportunity was the purchase of a real estate parcel in Parc a Boeuf in St. George Parish, Grenada, priced at $4,200,000.00,[1] which

---

[1] The Grenadian currency is also identified using the "$" and this Court can take judicial notice of that fact.

2

was then to be developed into a small hotel ("Project Boeuf"). *Id.* ¶¶ 9–10. Star Development Limited ("Star Development") is a Grenadian LLC. *Id.* at Exh. 1. On an unknown date in November 2017, Plaintiffs allege that Gelman and Firer represented that Star Development's members' contributions of $840,000.00 were critical to purchase the real estate parcel. *Id.* ¶ 10.

Plaintiffs then allege that on December 5, 2017, Gelman met with Goldstein in Florida. *Id.* ¶ 11. In advance of the meeting, Plaintiffs allege that Gelman and Firer sent Goldstein pictures of Project Boeuf. *Id.* During the December 5, 2017 meeting, Plaintiffs allege that Goldstein "had with him" a check from the account of Pinnacle in the amount of $840,000.00 that was made payable to *Star Equities* (not Star Development), and that Star Equities was controlled by Gelman and Firer. *Id.* During the December 5, 2017 meeting, Plaintiffs allege that Gelman gave Goldstein an undated operating agreement for Star Development (*Id.* at Exh. 1) ("First Operating Agreement") and, *when offered to Goldstein for signature*, the First Operating Agreement contained an untrue statement that Gelman's capital contribution was $840,000.00 and Firer's capital contribution was $840,000.00, when neither Firer or Gelman had contributed such amounts. *Id.* Notably, the First Operating Agreement did not state when contributions must be paid and stated Goldstein's contribution as $840,000.00 even though, by Plaintiffs' own allegation, it was not paid at the time it was presented to Goldstein. *Id.* at Exh. 1. The Exhibit II attached to the First Operating Agreement ("First Exhibit II"), which identified an $840,000.00 contribution from five members, and does not include Star Equities, is *undated* and is *not signed by all the members*. *Id.* at pg 23. The check attached to the Complaint has a signature that is not Goldstein's or any other alleged members. *Compare id.* at pg. 24, *with id.* at pgs. 22, 23, and 26.

Plaintiffs then allege that Pinnacle, with Goldstein "as nominee," purchased a 20%-interest in Star Development *from Star Equities* in exchange for $840,000.00 paid to Star Equities by way

3

of check from the account of Pinnacle. *Id.* ¶ 11. However, there is no agreement between Plaintiffs and Star Equities attached to the Complaint that reflects any such arrangement. Furthermore, Plaintiffs' allegation that Pinnacle, <u>not</u> Goldstein, purchased a 20%-interest in Star Development is refuted by the exhibits to the Complaint, which all identify Goldstein as a member, and <u>not</u> Pinnacle. *Id.* at pgs. 20–26.

Plaintiffs attach a separate copy of Exhibit II to the alleged operating agreement, dated December 30, 2017, which was signed by all members except, conveniently, not signed by Goldstein ("Second Exhibit II") (*Id.* at pg. 26). Plaintiffs allege that it was allegedly not until June 2020 that Plaintiffs discovered that Firer, Gelman, and Star Equities (apparently along with all the other members except Goldstein) signed a "different operating agreement" for Star Development on or about December 30, 2017, which appears to be a reference to Second Exhibit II. *Id.* ¶ 12. Plaintiffs do not name any members of Star Development as defendants except for Defendants. Plaintiffs allege that it was not until June 2020 that they discovered that Second Exhibit II identified Star Equities' and Goldstein's contributions as $840,000.00 each, but Gelman's, Firer's, and the other two non-parties' contributions, as $1,000.00, and that the total of contributions was $1,684,000.00, not $4,200,000.00. *Id.* ¶ 12.

Plaintiffs pleaded that the real market value of the 20% interest in Star Development that "Plaintiffs" purchased in December 5, 2017, was zero because Project Boeuf was recorded in the Deeds and Land Registry of Grenada on May 24, 2018, and that "no adjustments in the register of [Star Development] was made to reflect the purchase and no shares certificates were ever issued and/or transferred to either Plaintiff." *Id.* ¶ 13. It is unclear why a shares certificate would be issued and/or transferred to "either Plaintiff," when Plaintiffs allege that only one of the Plaintiffs is allegedly a member. *Id.*

4

Despite the recordation in 2018, Plaintiffs allege that it was not until June 2020 that they allegedly discovered that Star Development acquired Project Boeuf for $1,450,000.00 instead of the price of $4,200,000.00. *Id.* ¶ 12. While Plaintiffs initially stated Project Boeuf was *priced* at $4,200,000.00, they did not allege the $4,200,000.00 was represented to be the final sale price, they do not allege Project Boeuf's final sale price, and Plaintiffs fail to distinguish whether the $1,684,000.00 is in the same currency as the $4,200,000.00. *See* note 1 *supra*.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must offer more than mere "labels and conclusions" or "a formulaic recitation of the elements of the cause of action." *Twombly*, 550 U.S. at 555.

A complaint must be dismissed if the plaintiff lacks standing. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) (quoting *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 N.42 (11th Cir. 1991))). "A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack." *Id.* "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* (quoting *McElmurray v. Consol. Gov't of Augusta–Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007)).

It is appropriate for a court to grant a motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, based on the applicable statute of limitations if it is "apparent from the face of the complaint" that the cause of action is time-barred. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 844 (11th Cir. 2004).

I. **PLAINTIFFS LACK STANDING TO BRING THEIR CLAIMS.**

To establish standing, the plaintiff must "prove (1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236 (11th Cir. 2020).

    a. **Plaintiff Goldstein has No Standing.**

Plaintiffs allege that Goldstein was Pinnacle's "nominee." (ECF No. 1 ¶¶ 1, 10, 11, 13, 17, 20, 24, 31, 46(a)). Plaintiffs appear to allege that Goldstein was merely a straw man (for a purpose that Defendants will seek to ascertain through discovery if this case proceeds) that Pinnacle used to purchase an interest in Star Development, through a transaction with Star Equities, and that it is Pinnacle, *not Goldstein*, that is a member of Star Development, even though Plaintiffs' exhibits say the contrary. *Id.* ¶¶ 20–23, 26. Thus, by Plaintiffs pleading that Goldstein is a nominee, Plaintiffs fail to plead that Goldstein suffered an injury in fact because Goldstein cannot state that Defendants' actions affect him in a personal and individual way because any actions and injuries allegedly only affected and were suffered by Pinnacle. Alternatively, the Complaint fails to plead how Goldstein was injured as a nominee and further fails to plead why and/or how he can bring a claim as a nominee. Accordingly, all claims by Goldstein should be dismissed.

    b. **Plaintiffs' Exhibits Contradict Pinnacle's Standing.**

Pinnacle's alleged right to make any claim against Defendants is contradicted by Exhibits

1 and 2 in the Complaint. Plaintiffs' exhibits identify Goldstein as a member of Star Development, but not Pinnacle. Pinnacle's claims rely on the conclusory allegation that Goldstein is an undefined "nominee," yet the exhibits to the Complaint demonstrate that Pinnacle had no participation in Star Development other than that Goldstein used money he obtained from Pinnacle to purchase an interest in Star Development for himself individually. *Griffin Indus., Inc. v. Irvin.*, 496 F.3d 1189, 1206 (11th Cir. 2007) ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern"). Thus, Pinnacle has suffered no injury in fact and Pinnacle's claims should be dismissed for lack of standing.

## II. PLAINTIFFS FAIL TO PLEAD A CLAIM UNDER RULE 10B-5.

Count I of Plaintiffs' Complaint is against Star Equities. Plaintiff purports to bring a claim under the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); Rule 10b-5; and 17 C.F.R. § 240.10b-5. Based on the following reasons, Plaintiffs' claim should be dismissed.

### a. Plaintiffs' Claim is Time-barred.

"Section 10 of the Exchange Act and Rule 10b-5, amended by § 804 of the Sarbanes-Oxley Act of 2002, 'extended the limitations period for securities fraud actions to the lesser of two years from discovery of the fraud or five years from the date of the fraud.'" *LBS Petroleum, LLC v. Demir*, No. 1:15-CV-22880-UU, 2016 WL 4625619, at *4 (S.D. Fla. Mar. 7, 2016). "[T]he limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered 'the facts constituting the violation,' including scienter— irrespective of whether the actual plaintiff undertook a reasonably diligent investigation." *Id.* (quoting *Merck & Co., v. Reynolds*, 559 U.S. 633, 653 (2010)).

Plaintiffs pleaded that since signing the original Operating Agreement on December 5, 2017, "Defendant Star Equities nor its principals Firer and Gelman ever accounted for monies due

7

and owing to Plaintiffs despite repeated demands by Plaintiffs." ECF No. 1 ¶ 22(a). Taking Plaintiffs' allegations as true, a reasonably diligent plaintiff would have discovered facts allegedly constituting a violation. Since those facts occurred more than two years ago, Plaintiffs are barred from bringing their claims in Count I.

Accordingly, Plaintiffs are barred in bringing a claim, and Count I should be dismissed.

### b. Plaintiffs Fail to Plead a Material Misrepresentation or Omission.

"To state a claim for securities fraud under Rule 10b-5, a plaintiff must allege the following elements: (1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the misrepresentation or omission and the loss, commonly called "loss causation." *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1317 (11th Cir. 2019). Additionally, in stating a Rule 10b-5 claim, a plaintiff must also be aware that "[t]he focus of the Exchange Act is not upon the place where the deception originated, but upon purchases and sales of securities in the United States. Section 10(b) does not punish deceptive conduct, but only deceptive conduct 'in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered.'" *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 266 (2010).

A misrepresentation or omission is material if "a 'substantial likelihood' exists that a 'reasonable investor' would have viewed a misrepresentation or omission as 'significantly alter[ing] the 'total mix' of information made available." *Carvelli*, 934 F.3d at 1317 (quoting *S.E.C. v. Morgan Keegan & Co.*, 678 F.3d 1233, 1245 (11th Cir. 2012)). To survive a motion to dismiss, a securities-fraud claim brought under Rule 10b–5 must comply with the pleading requirements in Fed. R. Civ. P. 9(b) and "state with particularity the circumstances constituting

fraud or mistake," which "requires a plaintiff to allege specifically (1) which statements or omissions were made in which documents or oral representations; (2) when, where, and by whom the statements were made (or, in the case of omissions, not made); (3) the content of the statements or omissions and how they were misleading; and (4) what the defendant received as a result of the fraud." *Id.* at 1317–18.

"Finally, the PSLRA imposes additional heightened pleading requirements on Rule 10b-5 actions." *Luczak v. Nat'l Beverage Corp.*, No. 19-14081, 2020 WL 2111947, at *3 (11th Cir. May 4, 2020). "For Rule 10b-5 claims predicated on allegedly false or misleading statements or omissions, the PSLRA requires the complaint to specify each statement alleged to have been misleading and the reason or reasons why the statement is misleading." *Id.*

In paragraph 19 of the Complaint, Plaintiffs' attempt to generally refer to prior paragraphs of the Complaint, 1–14, as "devices, schemes, or artifices to defraud" and "misrepresentation of a material fact, or omitted a material fact" and an act, practice or course of business "that operated or would operate as a fraud or deceit on any person." (ECF No. 1 ¶ 19). Such pleading is not sufficient to state a claim because it is clear that not all paragraphs 1–14 allege such conduct and Plaintiffs' general pleading leaves Defendants unclear as to what misrepresentations or omissions they should be responding to and what is at issue in this case. *Barron v. Lampley*, No. 4:15-CV-0038-HLM, 2015 WL 12591006, at *11 (N.D. Ga. June 22, 2015) ("Plaintiffs cannot just incorporate all of the Complaint's previous 191 paragraphs to state a claim").

Additionally, Plaintiffs rely on contradictory and conclusory allegations by stating that "[n]either on the date and at the time of signing Exhibit 1 nor at any time thereafter, Defendant Star Equities or its agents Firer and Gelman ever disclosed to Plaintiffs that the dollar amounts, purporting to reflect capital contribution by Defendants Gelman and Firer on the schedule of

capital contributions in the Star Development Ltd, were false." *Id.* ¶ 20. Plaintiffs fail to allege why the amounts stated in the Operating Agreements reflect false information. Without alleging why the contributions of Defendants are false, Plaintiffs fail to specify any information that would show that, based on the alleged misrepresentation and/or omission, a 'substantial likelihood' exists that a 'reasonable investor' would have viewed a misrepresentation or omission as 'significantly alter[ing] the total mix of information made available.' *Carvelli*, 934 F.3d at 1317. Accordingly, Plaintiffs fail to state a material misrepresentation or omission for Count I, and the Complaint should be dismissed.

### c. Plaintiffs Failed to Plead Economic Loss.

In stating a claim in Count I, the Complaint does not to state which of the two Plaintiffs allegedly suffered an economic loss. The Complaint alleges "Plaintiff Pinnacle Three Corporation with Mr. Goldstein as nominee purchased $840,000.00 worth of unregistered non-exempt securities in Star Development Ltd, and thereby suffered economic losses." (ECF No. 1 ¶ 24).

On one hand, Plaintiffs allege that Goldstein, as a nominee for Pinnacle, has not used any of his own money to purchase anything in Star Development. Therefore, an alleged nominee (straw man) like Goldstein cannot plead that he suffered any economic loss. On the other hand, the exhibits to the Complaint allege that Goldstein was the member of Star Development, not Pinnacle, and therefore Pinnacle has not suffered any economic loss. Accordingly, the Complaint should be dismissed for failure to plead economic loss as to one or both of Plaintiffs.

### d. Plaintiffs Failed to Allege The Purchase of a Security in the United States.

A deceptive conduct in connection with the purchase or sale of a security has to be within the territorial reach of Rule 10-b5. The Eleventh Circuit ruled that a purchase occurs when the

transfer of the title of the shares occurs within United States territory. *Quail Cruises Ship Mgmt. Ltd. v. Agencia de Viagens CVC Tur Limitada*, 645 F.3d 1307, 1310 (11th Cir. 2011).

Plaintiffs fail to plead that the transfer to the title of the shares occurred in the United States. Plaintiffs' allegation that Gelman offered the Operating Agreement for Goldstein's signature is insufficient to state a transfer of title. The shares purchased belong to an entity established in Grenada, and the Operating Agreement states that that entity is formed according to the laws of Grenada. (ECF No. 1 at Exh. 1). Moreover, Plaintiffs even pleaded that the "20% interest was never recorded in the corporate registry of Star Development Ltd and no shares certificate was ever issued to Plaintiffs." *Id.* ¶ 25. The operating agreement attached to the Complaint states that "Additional members may only be admitted to the Company through a Certificate of New Membership issuance by the company of new instruct in the Company or as otherwise provided in this agreement." *Id.* at pg. 15 at ¶ 1.8. Thus, there was no transfer of title in the United States as there was no Certificate of New Membership issuance and shares that are not recorded within the issuer's own registry necessarily do not transfer the title of those shares. Plaintiffs' Complaint failed to plead that the shares were purchased in the United States.

Accordingly, because Plaintiffs fail to plead territoriality, Count I should be dismissed, and all claims contingent on Count I should also be dismissed.

e. **Plaintiffs Fail to Plead Loss Causation.**

With respect to loss causation, the Eleventh Circuit has stated that "[t]o prove loss causation, a plaintiff must show 'that the untruth was in some reasonably direct, or proximate, way responsible for his loss." *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1447 (11th. Cir. 1997) (quoting *Huddleston v. Herman & MacLean*, 640 F.2d 534, 549 (5th Cir. 1981), *aff'd in part, rev'd in part on other grounds*, 459 U.S. 375 (1983)). "If the investment decision is induced by

misstatements or omissions that are material and that were relied on by the claimant, but are not the proximate reason for his pecuniary loss, recovery under the Rule is not permitted." *Id.*

In this case, Plaintiffs pleaded loss causation by stating that "(a) at the time of sale it was illegal for Defendants to sell unregistered non-exempt securities, and since at the time of each sale there was no market for unregistered non-exempt securities, their market value was zero, or next to nothing; and/or (b) Plaintiffs' 20% interest was substantially diluted due to capitalization of only $1,684,000.00 as reflected on Exhibit 2; and/or (c) Plaintiffs' 20% interest was never recorded in the corporate registry of Star Development Ltd and no shares certificate was ever issued to Plaintiffs." (ECF No. 1 ¶ 25).

With respect to causes "a" and "c," Plaintiffs' allegations do not support loss causation. First, Plaintiffs' allegations that Defendants allegedly illegally sold unregistered non-exempt securities is entirely conclusory because Plaintiffs do not allege why such sale was "illegal." Additionally, Plaintiffs do not support the allegation that there was "no market" for the alleged sold securities. Lastly, in making these allegations, Plaintiffs fail to plead how the alleged "illegal" nature of the shares, the alleged inexistence of a market for the shares purchased, as well as the alleged failure to register the shares and issuing of certificates, purport to connect Defendants' alleged deception and/or manipulation of the shares with the loss incurred by Plaintiffs.

With respect to cause "b," Plaintiffs merely point to two alleged operating agreements in which one is not dated and Goldstein does not sign the other. Rather than pleading anything explaining how Plaintiffs' interest was substantially diluted due to capitalization, they simply want the Court to make the connection for them, which is simply conclusory and insufficient.

In summary, Plaintiffs' allegations regarding loss causation are not plausible, are conclusory, and Plaintiffs fail to allege that Defendants' alleged "fraud—as opposed to some other

factor—proximately caused his claimed losses," as is required to state a claim. *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1309 (11th Cir. 2011). Accordingly, Plaintiffs' Count I should be dismissed.

### III. PLAINTIFFS FAIL TO STATE A CLAIM UNDER CONTROLLING PERSONS'S LIABILITY IN COUNT II

Plaintiffs assert Count II against Star Equities, Gelman, and Firer, and Plaintiffs purport to allege "liability of controlling persons" under 15 U.S.C. § 78t, based on Plaintiffs' claims in Count I of the Complaint.

A controller's liability claim, "'[i]mposes liability on not only the person who actually commits a securities law violation, but also on an entity or individual that controls the violator.'" *In re 21st Century Holding Co. Sec. Litig.*, No. 07-61057-CIV, 2008 WL 5749572, at *15 (S.D. Fla. Nov. 7, 2008) (quoting *Laperrier v. Vesta Ins. Grp., Inc.*, 526 F.3d 715, 721 (11th Cir. 2008)). However, "[i]f a plaintiff cannot state a claim for securities fraud under § 10(b) and Rule 10b-5, his 'control-person' claims under § 20(a) 'necessarily fail as well.'" *Luczak*, 2020 WL 2111947, at *3 (quoting *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008)).

In this case, Plaintiffs misstate their claim against Star Equities for controlling person's liability. The Complaint pleads that Star Equities is the controlled-entity and is allegedly liable for committing the primary Rule 10-b5 violation. (ECF No. 1 ¶¶ 16–25). Therefore, Plaintiffs cannot simultaneously plead liabilities as "controlled" person and as "controlling" persons against Star Equities. Next, Plaintiffs cannot plead the purported controlling-person's liability claims against Gelman and Firer because Plaintiffs did not properly state a claim in Count I of the Complaint. Accordingly, because Plaintiffs cannot properly plead a controlling person claim in Count I, the Complaint should be dismissed.

### IV. PLAINTIFFS FAIL TO PLEAD A CLAIM IN COUNT III.

"A Florida–Securities–and–Investor–Protection–Act claim must be pleaded with heightened specificity because it is essentially a claim for fraud." *Barnett v. Blane*, No. 11-14345-CIV, 2013 WL 1001963, at *2 (S.D. Fla. Mar. 13, 2013). "The Florida statutory requirements are identical to Rule 10b-5 . . . except that the scienter requirement under Florida law is satisfied by a showing of mere negligence, whereas the minimum showing under Rule 10b-5 is reckless disregard." *Gochnauer v. A.G Edwards & Sons, Inc.*, 810 F.2d 1042, 1046 (11th Cir. 1987). And, "[t]he statute of limitations on claims under the Florida Securities and Investor Protection Act begins running when 'the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence.'" *Durden v. Citicorp Trust Bank, FSB*, No. 3:07-cv-974-J-33JRK, 2008 WL 2098040, at * 3 (M.D. Fla. May 16, 2008). "The statute bars actions filed more than two years from this time." *Id.*

Plaintiffs are barred from bringing a claim under Fla. Stat. § 517. 011 because Plaintiffs are filing this claim after two years. Plaintiffs explained that since signing the First Operating Agreement on December 5, 2017, "[Defendants] never accounted for monies due and owing to Plaintiffs despite repeated demands by Plaintiffs" (ECF No. 1¶ 22(a)), and "Plaintiffs' lack[ed] of independent access to information concerning Defendants Gelman and Firer's capital contributions into the Star Development Ltd, and omissions concerning non-exempt status of the unregistered securities." *Id.* ¶ 23. An investor in the position of Plaintiffs should have discovered with the exercise of due diligence that these facts raise suspicion, and that Defendants' actions could violate investor's rights. Since those facts occurred more than two years ago, Plaintiffs are barred from bringing their claims in Count III.

Next, for the same reasons that Plaintiffs failed to plead a claim in Counts I for violation of Rule 10b-5, Plaintiffs also fail to plead a claim for violation of Florida's Securities Investor

Protection Act. In support of Count III, Plaintiffs attempt to incorporate allegations from prior counts, which is not sufficient to state a claim and generally leaves Defendants unsure as to what exactly constitutes the claims against them. *Barron*, 2015 WL 12591006, at *11 ("Plaintiffs cannot just incorporate all of the Complaint's previous 191 paragraphs to state a claim"). Moreover, even if Plaintiffs could properly simply incorporate allegations from prior paragraphs, those paragraphs fail to state a cause of action in Count III with respect to all Defendants because, just like Plaintiffs' Rule 10b-5 claim (Count I) failed to state a claim, Plaintiffs have not sufficiently alleged a material misrepresentation or omission that was justifiably relied upon in connection with a purchase or sale of securities, and that the misrepresentation was the direct proximate cause of the loss. *Barnett*, 2013 WL 1001963, at *2. Moreover, Goldstein and/or Pinnacle have not suffered any economic loss for the same reasons set forth above in response to Count I. Accordingly, Count III of the Complaint should be dismissed.

**V.    PLAINTIFFS FAIL TO STATE IN COUNT IV A CLAIM FOR VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT.**

Count IV of the Complaint is alleged against Defendants Firer, Gelman, and Star Equities and purports to allege a violation of The Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"), pursuant to Fla. Stat. § 501.203. Plaintiffs argue that Counts I and III operate as an "implied FDUPTA predicate" (ECF No. 1 ¶ 39) or that Defendants' practices in selling units of ownership in Star Development, as alleged in paragraphs 1 and 9–14, were "deceptive" or "unfair." *Id.* ¶¶ 37–38. Plaintiffs' Count IV is also not sufficient to state a cause of action.

"To bring a FDUTPA claim for damages, a plaintiff must establish three elements: 1) a deceptive act or unfair practice; 2) causation; and 3) actual damages." *Stewart Agency, Inc v. Arrigo Enters., Inc.*, 266 So. 3d 207, 212 (Fla. 4th DCA 2019). Furthermore, "[a] FDUTPA claim, unlike a claim for fraud, requires proof that defendant's act would likely "mislead the [objective]

consumer acting reasonably in the circumstances." *Democratic Republic of Congo v. Air Capital Grp., LLC*, 614 F. App'x 460, 470 (11th Cir. 2015).

As an initial matter, Counts I and III of the Complaint cannot serve as a predicate for any FDUPTA claim because Plaintiffs fail to state a cause of action for those Counts in the Complaint, for the same reasons as set forth above.

Moreover, similar to Counts I, III, and V, Plaintiffs have not alleged that Goldstein and/or Pinnacle suffered actual damages and Plaintiffs have not alleged Count IV with the required particularity to form basis for their claims because Plaintiffs' claims in Count IV allegedly sound in fraud. *Alcon Labs., Inc. v. Allied Vision Grp., Inc.*, No. 18-CV-61638, 2019 WL 2245584, at *10 (S.D. Fla. Mar. 7, 2019) ("Accordingly, the undersigned finds that the FDUTPA counterclaim satisfies the specificity standard of Rule 9(b)). Accordingly, Plaintiffs fail to state a cause of action in Count IV of the Complaint.

## VI. PLAINTIFFS' COUNT V DOES NOT STATE A CLAIM FOR FRAUDULENT MISREPRESENTATION

In Count V, Plaintiffs purport to allege a claim for fraudulent misrepresentation against Gelman, Firer and Star Equities.

"Under Florida law, the elements of fraudulent misrepresentation are "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Paylan v. Teitelbaum*, 798 F. App'x 458, 467 (11th Cir. 2020) (citing *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)).

Claims based on fraudulent misrepresentation must be pleaded under the heightened Rule 9(b) pleading requirement. Fed. R. Civ. P. 9(b). ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.") Particularity means that "a

plaintiff must plead 'facts as to time, place, and substance of the defendant's alleged fraud,' specifically 'the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them." *U.S. ex. rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006).

For the same reasons stated above, Plaintiffs did not plead with particularity which of the two Plaintiffs was deceived by and relied on Defendants' alleged misrepresentations or suffered damages, and Plaintiffs' allegations establish that it cannot be both.  Accordingly, Plaintiffs have not met the heightened pleading requirement for fraudulent misrepresentation and the claim should be dismissed.

WHEREFORE, Defendants respectfully request that this Court enter an order dismissing the Complaint, and such other and further relief as this Court deems just and proper.

Dated: October 19, 2020

Respectfully submitted,

**STARK WEBER PLLC**
*Attorneys for Defendants*
1221 Brickell Avenue
Suite 900
Miami, FL 33131
Tel: (305) 377-8788
steve@starkweber.com

By:   s/Steven D. Weber
       Steven D. Weber
       Fla. Bar. No.: 47543

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 19th day of October, 2020, a copy of the foregoing has been served via the Court's CM/ECF portal to:

Sergiu Gherman
Fla. Bar No. 37031
sgherman@ghermanlaw.com
Gherman Legal Pllc
25 SE 2nd Ave. Ste. 808
Miami FL 33131-1603

17

*Attorney for Plaintiffs*
*Goldstein and Pinnacle Three Corporation*

By: s/Steven D. Weber
    Steven D. Weber