## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:20-cv-23402-JEM

LEON GOLDSTEIN,

      Plaintiff,

v.

OLEG FIRER, IGOR "GARY" GELMAN,
and STAR EQUITIES, LLC,

      Defendants.

_____

1. Violation of the Securities Exchange Act of 1934 15 U.S.C. § 78j(b); Rule 10b-5; 17 C.F.R. § 240.10b-5;
2. Liability of Controlling Persons, 15 U.S.C. § 78t;
3. Violation of the Florida's Securities Investor Protection Act, Fla. Stat. § 517.011 *et seq*.; and
4. Fraudulent Misrepresentation.

## COMPLAINT

Plaintiff LEON GOLDSTEIN sues Defendants OLEG FIRER, IGOR "GARY" GELMAN, and STAR EQUITIES, LLC.

### INTRODUCTION

1.    Defendants ran an illicit fundraising and money management scheme in violation of the Federal and State securities laws, a scheme by which they misled Plaintiff into purchasing unregistered non-exempt securities in Star Development Limited ("Star Development Ltd."), a Grenadian company, by lying in the operating agreement about the amounts of Defendants Oleg Firer's and Igor "Gary" Gelman's capital contributions to Star Development Ltd. and/or by misrepresenting and/or misattributing other investors' capital contributions as their own. The shares in the Star Development Ltd. sold to Plaintiff Goldstein constituted investment contracts and therefore securities. Defendants groomed Plaintiff Goldstein into investment under false promises of sky-high returns in a short period of time (less than six months) coupled with the misrepresentations about the amounts Defendants Firer and Gelman invested into the Star

Development Ltd. The purpose of these misrepresentations was to induce Plaintiff to entrust funds, in the form of initial capital contributions into the Star Development Ltd.[1] However, unencumbered by the risk of loss of their own monies, *i.e.* their own capital contributions into Star Development Ltd., Defendants Gelman and Firer were de facto unlicensed brokers of securities working without registration and regulatory supervision of the Florida Office of Financial Regulation, Division of Securities, Securities and Exchange Commission, and/or Financial Industry Regulatory Authority Inc.

PARTIES, JURISDICTION AND VENUE

2.      Plaintiff LEON GOLDSTEIN is an individual residing in Florida.

3.      Defendant OLEG FIRER is an individual residing and doing business within this District.

4.      Defendant IGOR "GARY" GELMAN is an individual residing and doing business within this District.

5.      Defendant STAR EQUITIES LLC is a Florida limited liability company doing business within this District.

6.      Section 78aa of the Securities Exchange Act of 1934 grants this Court jurisdiction over claims asserted in Counts I and II. Additionally, pursuant to section 78aa, venue is properly laid in this District, because the Defendants are found or are inhabitants or transact business in the Southern District of Florida. The Court's pendent jurisdiction over state law claims is invoked under section 1367 of Title 28, since the state claims form part of the same controversy.

---

[1] Defendants peddled and sold securities to other descendants from Ukraine and Russia. One such duped investor has sued Firer and companies controlled by him as part of another action filed in this District and titled *Linco Enterprises Inc. v. Firer et al.,* Case No. 1:20-cv-22234-JEM.

**BACKGROUND ALLEGATIONS**

7.      In the wake of Oleg Firer's appointment by the Grenadian government as Grenada's Ambassador to Russia, Defendant Firer together with his sidekick Defendant Gelman solicited investors in Moscow, Miami, and Odessa for "Project Boeuf," including Plaintiff Goldstein, supposedly for a development of a small hotel under Hilton's Curio™ brand, on a 3.67 acre parcel located on Parc a Boeuf in the St. George Parish, Grenada.  Defendants Firer and Gelman touted that "Project Boeuf" would soon receive a license for Grenada's Citizenship by Investment Program, the fundraised monies from which would be used in furtherance of the land improvement.

8.      On various occasions during the months of October and November 2017, in person and over the phone Defendants Firer and Gelman represented to Plaintiff Goldstein that they have identified and purchased through Star Development Ltd. real estate worth $4,200,000.00 in Grenada on which Project Boeuf would operate. Plaintiff Goldstein knew Defendants Firer and Gelman for at least 10 years, had business affairs with them previously, and generally trusted them. Defendants Firer and Gelman told Plaintiff Goldstein that each had himself invested $840,000 in Project Boeuf, and that Plaintiff Goldstein could do so too for a one-fifth interest in a project that would generate substantial profits in a short period of time (less than six months).

9.      On December 5, 2017, at or about noon, Plaintiff Goldstein met with Defendant Gelman in the lobby of the building where Plaintiff Goldstein lived, at 17555 Collins Avenue in Sunny Isles Beach—a date, time, and location agreed upon and set by Gelman. As previously instructed by Firer and Gelman, Plaintiff Goldstein had with him a check in the amount of $840,000.00 written to Star Equities LLC.  Defendant Gelman brought with him the "Limited Liability Company Operating Agreement for Star Development Limited, a Limited Liability

Company," a true and accurate copy of which is attached hereto as **Exhibit 1** (hereinafter, "Star Development Ltd. Operating Agreement"). When the Star Development Ltd. Operating Agreement was offered for signature to Plaintiff Goldstein, unbeknownst to Plaintiff Goldstein, it contained untrue statements of material fact, purporting Gelman's capital contribution of $840,000.00 and Firer's capital contribution of $840,000.00, while in reality neither of them has contributed any such amounts. At this meeting, Defendant Gelman reiterated to Plaintiff Goldstein that the $4.2M realty for the Project Boeuf was acquired. These misrepresentations were continuing in nature, because neither Defendant ever corrected them.

10.     In reliance upon the misrepresentations made by Defendants Firer and Gelman before the meeting, Plaintiff Goldstein had arranged for Pinnacle Three Corporation to loan him the purchase price for the twenty percent interest in Star Development Ltd., causing Pinnacle Three Corporation to issue a check payable to Star Equities in the amount $840,000, which check Mr. Goldstein brought to the meeting. (A copy of this check is made a part of Exhibit 1.)

11.     In reliance upon the misrepresentations, Plaintiff Goldstein delivered the $840,000 check that was subsequently negotiated by Star Equities. Plaintiff Goldstein believed he was purchasing a twenty percent interest in Star Development Ltd., which company was capitalized as shown in the Star Development Ltd. Operating Agreement. Only in mid-April 2020 did Plaintiff Goldstein independently learn that Gelman's and Firer's capital contributions as purported to Plaintiff Goldstein were false, and that neither of them contributed the $840,000.00 amount.

12.     The misrepresentation that the $4.2M realty for the Project Boeuf had been acquired was false.  Not until January 19, 2018 did Star Development Ltd. acquire the Grooms Beach land parcels, but not for $4.2M as purported previously by Firer and Gelman, but for $1,450,000.00. This Plaintiff Goldstein found out only in June 2020, independently.

13.　On December 5, 2015, when Plaintiff Goldstein was led to believe he was purchasing an interest in Star Development Ltd. worth $840,000, in reality the interest was worth zero.

14.　At all relevant times, Defendants have made representations, acknowledged, and/or manifested to Plaintiff that they were each other's agents and were acting within the scope of their authority when each made the misrepresentations as alleged herein. The payment of $840,000 to Star Equities was as a result of Plaintiff Goldstein's reasonable belief in the truthfulness of Defendants' representations and/or manifestations that they are and were each other's agents, and said payment arranged by Plaintiff Goldstein reflected his change in position on their representations and manifestations.

15.　Plaintiff Goldstein retained the undersigned counsel and is obligated to pay reasonable attorney's fees and costs in prosecution of this action.

### COUNT ONE: VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934
### 15 U.S.C. § 78j(b); RULE 10B-5; 17 C.F.R. § 240.10b-5
### [ALL DEFENDANTS]

16.　Plaintiff Goldstein restates the allegations in paragraphs 1 through 14 entirely.

17.　On December 5, 2017, at the time and location as more particularly alleged above, Plaintiff Goldstein purchased an investment in a commercial and/or financial business enterprise with the expectation that profits or other gain would be produced by others. The units and/or shares in Star Development Ltd. constitute a security.

18.　Defendants used instrumentalities of interstate commerce, such as mails, telephone, Internet, and/or other form of electronic communication, in connection with their sale and Plaintiff Goldstein's purchase of the securities.

19.　Defendants employed a device, scheme, or artifice to defraud – alleged in

paragraphs 1-14 – in connection with the purchase or sale of a security.

Alternatively, Defendants made misrepresentation of a material fact, or omitted a material fact – alleged in paragraphs 1-14 – in connection with the purchase or sale of a security.

Alternatively, Defendants engaged in an act, practice, or course of business – as alleged in paragraphs 1-14 in connection with the purchase or sale of a security – that operated or would operate as a fraud or deceit on any person.

20.    Neither on the date and at the time of signing the Exhibit 1 nor at any time thereafter, did any of the Defendants ever disclose to Plaintiff that the dollar amounts, purporting to reflect capital contributions by Defendants Gelman and Firer on the schedule of capital contributions in the Star Development Ltd., were in fact untrue. While "on paper" Plaintiff Goldstein for $840,000.00 was purchasing 20% of a $4,200,000.00 asset, in reality it was not so, and Defendants omitted disclosure of these material facts to Plaintiff.

21.    Had Plaintiff known of Defendants' misstatements as to capital contributions and/or omission of truth regarding capital contributions, and had Plaintiff known that Defendants could not lawfully sell non-exempt securities to Plaintiff Goldstein without prior registration, there is a substantial likelihood that Plaintiff would have attached importance to the misrepresented or omitted facts in determining its course of action, and would not have purchased the securities. Put another way, a reasonable investor, like Plaintiff Goldstein, would view the misstated or omitted facts as significantly altering the total mix of available information.

22.    Defendants acted knowingly or with severe recklessness in manipulating Plaintiff into purchasing the securities in the Star Development Ltd. As circumstantial evidence of intent to deceive, Plaintiff alleges:

(a)    Defendants never accounted for monies due and owing to Plaintiff;

(b)    Firer and Gelman never disclosed the true sums of their capital contributions into Star Development Ltd.;

(c)    Defendants never disclosed that they could not lawfully sell non-exempt securities of Star Development Ltd. to Plaintiff without prior registration;

(d)    On July 13, 2020 Defendant Gelman came to see in person Plaintiff Goldstein purportedly "to smooth things over" on behalf of himself, Firer, and other Defendants. However, when confronted by Plaintiff about the amount of capital contributions as reflected on Exhibit 1, and about the purchase price of the Project Boeuf realty, Gelman still lied, stating that that land was purchased for $3.8 million.

23.    On December 5, 2017, at the time and place as more specifically alleged above, Plaintiff reasonably relied on Defendants' misrepresentations and omissions concerning the securities, taking in consideration:

- Plaintiff's relative unsophistication in matters involving securities;

- Existence of a long-term business and personal relationship between Plaintiff Goldstein and Defendants Firer and Gelman;

- Plaintiff's lack of independent access to information concerning Defendants Gelman and Firer's capital contributions into the Star Development Ltd., and omissions concerning non-exempt status of the unregistered securities;

- Defendants owed a fiduciary duty to Plaintiff Goldstein by virtue of his membership in the Star Development Ltd.;

- Defendants concealed the misrepresentations and/or omissions regarding capital contributions and/or regarding the fact that Plaintiff is purchasing securities which must have been registered with the Securities and

Exchange Commission, but in fact were not; and

- Defendants were the ones who initiated the sale of securities in Star Development Ltd. transactions and/or sought to expedite them.

24.     As a proximate result of Defendants' deception and/or manipulation in connection with the purchase and sale of securities, Plaintiff Goldstein purchased unregistered, non-exempt securities in Star Development Ltd., delivered $840,000 to Star Equities, which entity has not returned any part of the purchase price, and Plaintiff Goldstein suffered economic losses.

25.     Defendants' deception and/or manipulation in connection with the purchase and sale of securities was proximately responsible for Plaintiff's loss, because: (a) at the time of sale it was illegal for Defendants to sell unregistered non-exempt securities, and since at the time of each sale there was no market for unregistered non-exempt securities, their market value was zero, or next to nothing; and/or (b) Plaintiff Goldstein's 20% interest was diluted to circa 5.8%.

### COUNT TWO: LIABILITY OF CONTROLLING PERSONS: 15 U.S.C. § 78t [FIRER]

26.     Plaintiff restates the allegations in paragraphs 1 through 14 and 17 through 25 entirely.

27.     The Defendants violated the Exchange Act of 1934 as more specifically alleged in Count I.

28.     Defendant Firer by virtue of being a manager of the Star Development Ltd. and Star Equities, LLC had the power to control the general business affairs of the Star Development Ltd. and Star Equities, LLC and had the power to directly control or influence the specific company policies that created the scheme and/or resulted in the sale of securities to Plaintiff as alleged above.

29.     Defendants Firer had control over the statements made in the Star Development

Ltd. Operating Agreement, Exhibit 1, including those misrepresenting the capital contributions by Defendants Gelman and Firer into the Star Development Ltd.

30.     Defendants Firer had control over the bank account of Star Equities, LLC, which received the funds that Plaintiff Goldstein gave in-hand to Gelman on December 5 to acquire an interest in Star Development Ltd.

31.     As a direct and proximate result of Defendants' deception and/or manipulation in connection with the purchase and sale of securities in the Star Development Ltd., Plaintiff purchased $840,000.00 worth of unregistered securities and suffered economic losses in the amount to be proven at trial.

### COUNT THREE: VIOLATION OF FLORIDA'S SECURITIES INVESTOR PROTECTION ACT
### FLA. STAT. § 517.011, ET SEQ.
### [ALL DEFENDANTS]

32.      Plaintiff restate the allegations in paragraphs 1 through 15 and 17 through 25 entirely.

33.     Defendants acted at least negligently in manipulating Plaintiff into purchasing securities in the Star Development Ltd.

34.     Any agent of seller which has personally participated in sale of security is liable for FSIPA violations, whether agent is corporation, partnership, or natural person. Defendants Star Equities, Gelman, and Firer, as persons directors, officers, partners, or agents of the Star Development Ltd., are jointly and severally liable to Plaintiff.

### COUNT FOUR: FRAUDULENT MISREPRESENTATION
### [ALL DEFENDANTS]

35.     Plaintiff restate the allegations in paragraphs 1 through 14 entirely.

36.     Firer and Gelman made false statements concerning a material fact, specifically Defendants misrepresented in the Exhibit 1 the amounts of Defendants Firer and Gelman's capital

contributions into the Star Development Ltd. and/or misattributed other investors' capital contributions as their own and they misrepresented that Star Development Ltd. controlled an asset worth $4,200,000.

37.    Defendants knew the statements were false when they made them and when Star Equities, LLC accepted the monies obtained from Plaintiff Goldstein in reliance upon the false statements.

38.    Defendants intended that Plaintiff would rely on these false statements so that Plaintiff would arrange for $840,000 to be transferred for an investment into Star Development Ltd. based upon the mistaken belief that Firer and Gelman had each personally invested the same amount in the undertaking and that Star Development Ltd. had acquired an asset worth $4,200,000.00 before Plaintiff Goldstein invested. Under no circumstance would Plaintiff Goldstein made an investment of $840,000 if he had know that neither Firer nor Gelman had invested the same amount for their one-fifth interest in Star Development Ltd. and that Star Development Ltd. had not acquired any real estate, let alone real estate worth $4,200,000.

39.    Plaintiff relied on Defendants' false statements, since the falsity could have not been discovered by Plaintiff, because the knowledge about capital contributions was in Defendants' sole possession and/or control.

40.    The false statements were a legal cause of Plaintiff's financial losses.

41.    Based upon the intentional misconduct underlying the claim for relief made in this count, the defendants are liable for punitive damages.

**WHEREFORE**, Plaintiff respectfully requests the Honorable Court as follows:

(a)    Rescind the operating agreement between Leon Goldstein and Star Development Limited and order the return of $840,000.00 paid on behalf of Leon Goldstein as consideration for

purchase of the membership units in Star Development Limited, together with prejudgment interest

on same amount;

(b)     Award Plaintiff actual damages arising out of purchase and sale of units and/or

shares in Star Development Ltd., in the amount to be proven at trial but no less than $840,000.00,

together with prejudgment interest;

(c)     Award Plaintiff such additional damages, including, without limitation, punitive

damages, over and above the amount of their actual damages, that are authorized and warranted

by law;

(d)     Award Plaintiff court costs and attorney's fees pursuant to Fla. Stat. §§ 517.211;

and

(e)     Award such other relief as this Court deems just and appropriate.

Respectfully submitted,

*Co-Counsel for the Plaintiff/Counter-Defendant*

GHERMAN LEGAL

777 Brickell Ave Ste 500
Miami, Florida 33131-2803
Phone: (305) 889-7890
sgherman@ghermanlaw.com

By:   */s Sergiu Gherman*
        Sergiu Gherman, FBN 37031

*Co-Counsel for the Plaintiff/Counter-Defendant*

BENNETT & AIELLO
*Temporary Address for Mail*
3471 Main Highway, Suite 206
Coconut Grove, Florida 33133-5929
Phone: (305) 358-9011
paiello@bennettaiello.com

By:   */s Paul Aiello*
        Paul Aiello, FBN 909033

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 11, 2021 the foregoing document is being served this

day on all attorneys of record through the CM/ECF website for this judicial district.

By:     /s/ Paul Aiello