UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(MIAMI)

CASE NO. 20-23402-CIV-MARTINEZ-BECERRA

LEON GOLDSTEIN,

    Plaintiff,

v.

OLEG FIRER, IGOR "GARY" GELMAN, and
STAR EQUITIES, LLC

    Defendants.

_____/

### DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendants OLEG FIRER ("Firer"), IGOR "GARY" GELMAN ("Gelman"), and STAR EQUITIES, LLC ("Star Equities") (collectively "Defendants"), by and through their undersigned counsel, hereby file this Motion to Dismiss the Amended Complaint and Incorporated Memorandum of Law (the "Motion") filed by Leon Goldstein ("Goldstein"), pursuant Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6), and in support, state as follows:

### INTRODUCTION

Goldstein's attempt to save his flawed claims through an amended complaint is futile. First, Goldstein lacks standing to bring the claims. This Court already found that Goldstein did not have any standing as a "nominee" to Pinnacle Three Corporation, who was a plaintiff when this case was filed but has not been named a plaintiff in the Amended Complaint. *See* ECF No. [1], [25]. The Court offered Goldstein an opportunity to fix this flaw though amendment, and stated "the amended complaint should set out with sufficient clarity how each Plaintiff has standing."

1

ECF No. [25] at 7. Goldstein did not do so. Rather than explain how Goldstein and Pinnacle each suffered an injury, Goldstein included new allegations that wholly contradict the allegations in the original complaint and the arguments made in opposition to the original motion to dismiss. Namely, Goldstein and Pinnacle Three Corporation had previously alleged and argued in detail that Goldstein had standing because Pinnacle Three Corporation had purchased the securities through Goldstein as a nominee, and that the law allowed shares to be held in the names of nominees. Given the Court's ruling that such allegations were insufficient to show that either Goldstein or Pinnacle Three Corporation had standing to bring the claims, Goldstein has concocted a new theory: that Pinnacle Three Corporation loaned the money to Goldstein to purchase the shares, not as Pinnacle Three Corporation's nominee, but as an individual. Courts in this district and elsewhere have recognized the general rule that a plaintiff may not contradict allegations made in a prior complaint in order to respond to arguments made in a motion to dismiss and avoid dismissal. This Court should adopt the reasoning in these decisions and ignore the new allegations of a purported loan and instead take the allegations that Goldstein purchased the shares as a nominee as true, and dismiss the claims for lack of standing.

Second, Goldstein is seeking an impermissible extraterritorial application of the Securities Exchange Act of 1934 15 U.S.C. § 78j(b); Rule 10B-5; 17 C.F.R. § 240.10b-5. Specifically, Goldstein has failed to plead that a transaction amounting to the purchase or sale of a security occurred in the United States. Instead, Goldstein alleges that he was presented the Operating Agreement and that he issued a check in Sunny Isles, Florida, but such underlying conduct does not amount to the transfer of title of the securities, which is required in the Eleventh Circuit to consummate a sale or purchase of a security. Therefore, this is additional reason as to why Counts I-II must be dismissed.

Both the lack of standing and the extraterritorial application of the securities laws are fatal to Goldstein's claims and, therefore, the Court should dismiss the Amended Complaint with prejudice.

## RELEVANT PROCEDURAL BACKGROUND

This case was commenced on August 17, 2020 through the filing of a complaint by plaintiffs Pinnacle Three Corporation ("Pinnacle") and Goldstein. In the original complaint, ECF No. [1], Pinnacle and Goldstein purported to bring five claims against Defendants: (1) Violation of the Securities Exchange Act of 1934 15 U.S.C. § 78j(b); Rule 10b-5; 17 C.F.R. § 240.10b-5; (2) Liability of Controlling Persons, 15 U.S.C. § 78t; (3) Violation of the Florida's Securities Investor Protection Act, Fla. Stat. § 517.011 et seq.; (4) Violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.203 et seq.; and, (5) Fraudulent Misrepresentation. In the original complaint, Pinnacle and Goldstein plead that Goldstein was holding the shares that Pinnacle had purchased in Goldstein's name as Pinnacle's "nominee" ECF No. [1] ¶¶ 1, 10, 11, 13, 17, 20, 24, 31, 46(a).

On October 19, 2020, Defendants filed a motion to dismiss arguing, among other things, that Pinnacle and Goldstein lacked standing to bring the claims because they had not suffered an injury in fact. Specifically, the complaint alleged that Goldstein held the shares as a nominee to Pinnacle, who paid for the shares. This allegation showed that Goldstein had not suffered an injury in fact because the alleged wrongdoing did not affect Goldstein in a personal and individual way. ECF No. [10], Defendants' Motion To Dismiss Plaintiffs' Complaint And Incorporated Memorandum Of Law ("First MTD"), at 6). Similarly, Pinnacle lacked standing because the exhibits attached to the Complaint purported to show that Goldstein, and not Pinnacle, was a member of Star Development. *Id.* at 6-7. Defendants noted that Pinnacle's claims "rely on the

3

conclusory allegation that Goldstein is an undefined 'nominee,' yet the exhibits to the Complaint demonstrate that Pinnacle had no participation in Star Development other than that Goldstein used money he obtained from Pinnacle to purchase an interest in Star Development for himself individually" and that Goldstein lacked standing "because any actions and injuries allegedly only affected and were suffered by Pinnacle." *Id.* at 6-7.

On November 2, 2020, Pinnacle and Goldstein filed their opposition to the First MTD. ECF No. [12], *Memorandum In Opposition To Defendants' Motion To Dismiss Complaint* ("Response to First MTD"). In their Response to the First MTD, Pinnacle and Goldstein argued that the joinder of both plaintiffs at the outset of the litigation moots the standing objections. ECF No. [12] at 1-2. Furthermore, the Response also alleged that Goldstein had standing because he was the real party in interest, and "[t]he governing substantive law permits Pinnacle's claims be asserted by a nominee." *Id* at 2-3. They again alleged that Pinnacle had purchased the shares through Goldstein as a "nominee," and cited Black's Law Dictionary for the definition of nominee as "[a] person designated to act in place of another, usu[ally] in a very limited way. [and/or] A party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others." *Id*. at 2 (quoting NOMINEE, Black's Law Dictionary (11th ed. 2019)). They further argued that while Goldstein didn't pay the $840,000 consideration, and Pinnacle did, the Companies Act of Grenada permits ownership (of Pinnacle) to be held through a nominee (i.e., Goldstein). *Id.* at 2. They concluded that at the motion to dismiss stage, Defendants and the Court "must accept allegations that for $840,000.00 Pinnacle procured to have Goldstein's / nominee's name on the Operating Agreement of Star Development Ltd, through which Operating Agreement Defendants delivered material misrepresentations falsities to Plaintiffs." *Id*. at 3.

On June 2, 2021, the Court issued an order denying in part and granting in part the First MTD.  ECF No. [25], Order Denying Defendants' Motion To Dismiss Plaintiffs' Complaint And Incorporated Memorandum Of Law ("Order").  As to standing, the Court agreed that inconsistencies between the allegations and attached exhibits made it unclear  "as to whether it is Goldstein and/or Pinnacle that have suffered an injury in fact and, therefore, have standing to bring the current action." *Id.* at 7.  The Court then concluded that "Plaintiffs' Complaint should be dismissed without prejudice as to this issue and the amended complaint should set out with sufficient clarity how each Plaintiff has standing." *Id.*

On June 11, 2021, Goldstein (this time without Pinnacle) filed a new complaint, purporting to set forth four counts against Defendants: (1) Violation of the Securities Exchange Act of 1934 15 U.S.C. § 78j(b); Rule 10b-5; 17 C.F.R. § 240.10b-5;  (2) Liability of Controlling Persons, 15 U.S.C. § 78t;  (3) Violation of the Florida's Securities Investor Protection Act, Fla. Stat. § 517.011 *et seq.*; and (4) Fraudulent Misrepresentation. ECF No. [26] ("Amended Complaint")).  Rather than explain how each plaintiff (Pinnacle and Goldstein) had standing (as ordered by the Court), Goldstein filed the Amended Complaint individually, Pinnacle was not named a plaintiff, and Goldstein contradicted the prior allegations and argument that Pinnacle had purchased the shares through Goldstein as a nominee by now alleging that Goldstein personally purchased the shares through a loan made by Pinnacle. ECF No. [26] ¶ 10.

## ALLEGED FACTUAL BACKGROUND

The crux of Goldstein's Amended Complaint is that: "Defendants ran an illicit fundraising and money management scheme in violation of the Federal and State securities laws, a scheme by which they misled Plaintiff into purchasing unregistered non-exempt securities in Star Development Limited ("Star Development Ltd."), a Grenadian company, by lying in the operating

5

agreement about the amounts of Defendants Oleg Firer's and Igor "Gary" Gelman's capital contributions to Star Development Ltd. and/or by misrepresenting and/or misattributing other investors' capital contributions as their own." ECF No. [26] ¶ 1.

According to Goldstein, Defendants allegedly approached him for an investment in "Project Bouef," consisting of the development of a small hotel under Hilton's Curio™ brand, on a 3.67 acre parcel located on Parc a Boeuf in the St. George Parish, Grenada. ECF No. [26] ¶ 7. Thereafter, on various occasions, in person and over the phone, Defendants Firer and Gelman allegedly represented to Goldstein that they had purchased through Star Development Ltd. real estate worth $4,200,000.00 in Grenada on which Project Boeuf would operate, and that each Defendant had invested $840,000 of its own money in the project. *Id.* ¶ 8. Goldstein alleges that Defendants Firer and Gelman offered the him the opportunity of obtaining a one-fifth interest in Star Development Ltd. for a price of $840,000. *Id.*

According to Goldstein, on December 5, 2017, "Plaintiff Goldstein met with Defendant Gelman in the lobby of the building where Plaintiff Goldstein lived, at 17555 Collins Avenue in Sunny Isles Beach" and, during that meeting, Goldstein provided a check in the amount of $840,000.00 written to Star Equities LLC. *Id.* ¶¶ 9-10. Defendant Gelman allegedly offered Goldstein a copy of a "Limited Liability Company Operating Agreement for Star Development Limited, a Limited Liability Company," ("Operating Agreement") for his signature. *Id.* ¶ 9. Goldstein alleges that the Operating Agreement contained untrue statements because Defendants Gelman and Firer had not contributed $840,000 each, as the document purported to show. *Id.*

Goldstein now alleges that he obtained a loan from Pinnacle in the amount of $840,000, and used that loan to purchase his 20% interest in Star Development Ltd. *Id.* ¶ 10. As discussed below, this new allegation of a loan contradicts Pinnacle's and Goldstein's prior factual

6

allegations. Also of note, Goldstein does not allege that the purchase was ever consummated or that he received the shares (and, in fact, the original complaint admitted that the "20% interest was never recorded in the corporate registry of Star Development Ltd and no shares certificate was ever issued to Plaintiffs." ECF No. [1] ¶ 25).

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must offer more than mere "labels and conclusions" or "a formulaic recitation of the elements of the cause of action." *Twombly*, 550 U.S. at 555.

A complaint must be dismissed if the plaintiff lacks standing. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) (*quoting Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991))). "A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack." *Id*. at 1232. "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id*. at 1232-33 (*quoting* M*cElmurray v. Consol. Gov't of Augusta–Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007)).

Some courts in this district, as well as courts in other federal circuits and the Second Circuit Court of Appeals, have recognized that "[a]s a general rule, a plaintiff . . . may not plead facts in their amended complaint that contradict those in their original complaint." *Rubinstein v. Keshet*

*Inter Vivos Tr.,* 17-61019-CIV, 2017 WL 7796306, at *3 (S.D. Fla. Nov. 1, 2017) (quoting *Hourani v. Mirtchev*, 943 F. Supp. 2d 159, 171 (D.D.C. 2013)); *Fernandez v. Sch. Bd. of Miami-Dade Cty.*, 201 F. Supp. 3d 1353, 1361, n. 1 (S.D. Fla. 2016) (accepting the allegations from the original complaint where the amended complaint directly contradicted them after noting that "[t]he Court looks to several decisions from courts in the Second Circuit, which have held that courts '[i]n rare circumstances... will consider prior pleadings...when the plaintiff directly contradicts the facts set forth in his original complaint.'"); *Hourani v. Mirtchev,* 943 F. Supp. 2d 159, 171 (D.D.C. 2013) (stating that "[a] plaintiff, however, may not plead facts in their amended complaint that contradict those in their original complaint."). When a plaintiff files an amended complaint, and pleads allegations that are contradictory to the allegations set forth in its previous complaint, "a court accepts the facts as described in the original complaint as true." *Rubinstein,* 2017 WL 7796306, at *3 (quoting *Wallace v. New York City Dep't of Corr.*, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996)); *2002 Lawrence R. Buchalter Alaska Trust v. Phila. Fin. Life Assur. Co.*, 96 F.Supp.3d 182, 206 (S.D.N.Y.2015) ("In rare circumstances... [courts] will consider prior pleadings...when the plaintiff directly contradicts the facts set forth in his original complaint."); *Colliton v. Cravath, Swaine & Moore, LLP*, No. 08–0400, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008), *aff'd*, 356 Fed.Appx. 535 (2d Cir.2009) (per curiam) (accepting the facts as alleged in the original complaint as true for the purposes of a motion to dismiss where the plaintiff made a "transparent attempt...to amend his pleading[s] in order to avoid a dispositive defense" raised by the defendant and the amended complaint directly contradicted the original complaint); *Barris v. Hamilton*, No. 96–9541, 1999 WL 311813, at *2 (S.D.N.Y. May 17, 1999) (holding that a court "disregard the contradictory and manipulated allegations of an amended pleading.").

More recently, in March 2021, in the case *Afr. Growth Corp. v. Republic of Angola*, the Honorable District Court Judge Kathleen M. Williams in this District, adopted this rule. *Afr. Growth Corp. v. Republic of Angola,* No. 19-21995-CIV, 2020 WL 9219119, at *15, n. 13 (S.D. Fla. Aug. 13, 2020), *report and recommendation adopted*, No. 19-21995-CIV, 2021 WL 870534 (S.D. Fla. Mar. 9, 2021).[1] Judge Torres cited to *Hourani v. Mirtchev,* 943 F. Supp. 2d 159, 171 (D.D.C. 2013) (stating that "[a] plaintiff ... may not plead facts in their amended complaint that contradict those in their original complaint."), and wrote:

> While reconcilable 'small variations' between the complaints are acceptable, *Price v. Socialist People's Libyan Arab Jamahiriya*, 389 F.3d 192 (D.C. Cir. 2004), a plaintiff may not blatantly change the facts to respond to a defendant's motion to dismiss and while doing so contradict the facts set forth in the prior pleading. *See Colliton v. Cravath, Swaine & Moore LLP*, 2008 WL 4386764, at *6, (S.D.N.Y. Sept. 24, 2008)(internal quotation marks and citations omitted).

*Id.*

I. **GOLDSTEIN LACKS STANDING TO BRING HIS CLAIMS.**

This Court has already agreed that Goldstein, as a nominee of Pinnacle, lacked standing to bring the claims because he had not suffered an injury in fact. *See* ECF No. [25] at 7. The Court provided Goldstein (and Pinnacle, who is no longer a plaintiff) an opportunity to amend the complaint and "set out with sufficient clarity how each Plaintiff has standing." *Id.* Instead of doing so, Goldstein has changed his allegations in an impermissible contradictory manner: Goldstein's role in the transaction has magically changed from being a nominee who held shares acquired and paid by Pinnacle, to the actual purchaser and owner of the shares, which he obtained through a loan from Pinnacle, who is now not even a plaintiff in the case. A plaintiff should not be allowed

---

[1] This decision is pending on appeal to the Eleventh Circuit under appellate case number 21-11136.

to simply make up new facts that contradict prior facts merely to avoid to dismissal, which is exactly why, as discussed above, several courts, including in this District, have adopted a rule prohibiting such inequitable conduct. *See, e.g.*, *Rubinstein,* 17-61019-CIV, 2017 WL 7796306, at *3. The Court should follow those decisions and ignore these new allegations, take the original allegations as true, and because, despite having been given an opportunity to do so, Goldstein has not set out any specific details about how, as a nominee, it has suffered an injury to establish standing, the claims must be dismissed with prejudice.

More specifically, in complete juxtaposition to the original complaint, the Amended Complaint (ECF No. [26]) states that :

> Plaintiff Goldstein had arranged for Pinnacle Three Corporation to loan him the purchase price for the twenty percent interest in Star Development Ltd., causing Pinnacle Three Corporation to issue a check payable to Star Equities in the amount $840,000, which check Mr. Goldstein brought to the meeting.

ECF No. [26] ¶ 10

This is a complete turn-around from what was previously plead and argued in response to the First MTD: that Goldstein was Pinnacle's "nominee," (ECF No. [1] ¶¶ 1, 10, 11, 13, 17, 20, 24, 31, 46(a)), making him no more than a straw man that *Pinnacle* used to purchase a membership interest in Star Development, through a transaction with Star Equities, and that it was Pinnacle, *not Goldstein*, that was a member of Star Development, even though Goldstein's exhibits purported to show the contrary. *Id.* ¶¶ 20–23, 26.

In the Amended Complaint, Goldstein is now not merely someone that held the membership interest in the name of another (a nominee), but is actually a someone that was given a loan by Pinnacle for purposes of directly and individually buying a membership interest in Star Development. Goldstein went as far as arguing that his standing was based on his assertion of

10

*Pinnacle's* claims, and not his own, as a nominee. ECF No. [12] at 3. Yet, now, the Amended Complaint pleads that Goldstein is bringing the current claims because his rights were harmed, as opposed to Pinnacle's, and Pinnacle, who is no longer a plaintiff, merely took the role of a lender. Because the allegations are entirely contradicted by the original complaint and prior arguments to the Court, the new allegations should be void, and allegations in the original complaint should control.

Of import, in the Amended Complaint, Goldstein has not explained with any degree of specificity how, as a nominee of Pinnacle, it has suffered an injury in fact. Thus, under the same reasoning that this Court applied in dismissing the claims without prejudice for lack of standing, the Court should not dismiss the Amended Complaint. *See* ECF. No. [25]. Specifically, in pleading standing a plaintiff must show "(1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." *Jacobson v. Fla. Sec'y of State,* 974 F.3d 1236, 1245 (11th Cir. 2020). Goldstein fails to show that he had an injury in fact as a result of Defendants' actions. Moreover, because Goldstein has already been given an opportunity to cure this deficiency, but failed to do so, dismissal with prejudice is warranted. *See Manchec v. SMA Engines, Inc.*, 0614347CIVMARTINEZLY, 2007 WL 9702588, at * 1(S.D. Fla. June 20, 2007) (dismissing with prejudice plaintiff's claims after plaintiff amended its complaint).

**II.    GOLDSTEIN'S SECURITIES FRAUD AND RELATED CLAIMS FAIL BECAUSE HE DOES NOT ALLEGE THE PURCHASE OF A SECURITY IN THE UNITED STATES.**

It is now well-established that § 10(b) of the Securities Exchange Act and SEC Rule 10b–5 do not apply extraterritorially. *Morrison v. Nat'l Australia Bank Ltd.,* 561 U.S. 247, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010); *Quail Cruises Ship Mgmt. Ltd. v. Agencia de Viagens CVC Tur Limitada*, 645 F.3d 1307, 1310 (11th Cir. 2011). A domestic application requires that the securities

either be listed in a domestic exchange or that the sale or purchase of the non-listed security occur in the United States. *Quail,* 645 F.3d 1310. In determining if a securities fraud claim is domestic, the Supreme Court explained that the focus of the statute in on purchases and sales that occur withing the United States, and adopted a bright-line transactional test. *Quail*, 645 F.3d at 1310 (citing *Morrison,* 130 S.Ct. at 2884–86). Under this test, "regardless of whether the underlying fraudulent conduct occurs in or affects the United States, § 10(b) applies only where the security at issue is listed on a domestic stock exchange or, if not so listed, where 'its purchase or sale is made in the United States.'" *Id.* quoting *Morrison*, 130 S. Ct. at 2886; *see also* Morrison, 13 S. Ct. at 2884 (explaining that the focus of congressional concern was "not upon the place where the deception originated, but upon purchases and sales of securities in the United States."). To determine where a purchase or sale of securities took place, the Eleventh Circuit looks to where the transfer of title to securities took place. *Quantum Cap., LLC v. Banco de los Trabajadores,* No. 1:14-CV-23193-UU, 2015 WL 12259226, at *12 (S.D. Fla. Dec. 22, 2015) (citing *Quail*, 645 F.3d at 1310).

In this case, Goldstein is seeking an impermissible extraterritorial application of the securities law because he has failed to plead that the transfer to the title of the shares occurred in the United States. Instead, Goldstein alleges that on December 5, 2017, Goldstein met with Gelman at the building where Goldstein lived, in Sunny Isles Beach, Florida. ECF. No. [26] ¶ 9. During that meeting, Goldstein allegedly gave a check drawn from Pinnacle's bank account in the amount of $840,000, and Gelman provided the Operating Agreement to Goldstein for his signature. *Id.* ¶¶ 9-10. Taking these allegations as true for purposes of a motion to dismiss, the offering of the Operating Agreement for Goldstein's signature and receipt of the check is insufficient to state a transfer of title because the transaction was not consummated at that time.

*Quail,* 645 F.3d at 1311 (the closing of the sale, *i.e.*, the transfer of title of the shares, must occur in the United States); *see generally Quantum Cap., LLC v. Banco de los Trabajadores*, No. 1:14-CV-23193-UU, 2015 WL 12259226, at *13 (S.D. Fla. Dec. 22, 2015) (the transfer of funds through U.S. financial institutions is insufficient to make a transaction domestic where the transfer of title occurred abroad .

The Operating Agreement, a copy of which was attached to the Amended Complaint, states that "Additional members may only be admitted to the Company through a Certificate of New Membership issuance by the company of new interest in the Company or as otherwise provided in this agreement." ECF No. [26-1] at ¶ 1.8. Consistently, Companies Act Cap. 58A of the Continuous Revised Edition of the laws of Grenada (ECF No. [26-1] ¶ 1.1), which controls here as the shares allegedly purchased belong to an entity established in Grenada, expressly addresses the transfer of shares. In that regard, relevant portion Section 195, titled "Transferring of shares," provides:

> the beneficial ownership of the shares or debentures of a company passes to the transferee—
> (a) on the delivery to him or her of the instrument of transfer signed by the transferor and of the transferor's share certificate or debenture, as the case may be; or
> (b) on the delivery to him or her of an instrument of transfer signed by the transferor that has been certified by or on behalf of the company, or by or on behalf of the Stock Exchange of Grenada, or a regional Stock Exchange of the Organisation of Eastern Caribbean States or of CARICOM if Grenada belongs to such regional Stock Exchange.

Exh. 1 (also available at https://gov.gd/sites/caipo/files/docs/Documents/Cap58A-Companies%20Act%5B1%5D.pdf, last visited June 25, 2021).

Thus, in this case, pursuant to both Grenadian law and the Operating Agreement, the transfer of title requires the issuance of a Certificate of New Membership (*i.e.*, the instrument of transfer or share certificate under the Grenada statute), which the Amended Complaint does not

13

allege ever occurred, much less than it occurred within the United States. The lack of allegations demonstrating that the purchase of the securities, *i.e.*, the transfer of title, occurred in the United States, is fatal to the claims.[2] In sum, there was no transfer of title in the United States as there was no Certificate of New Membership issuance, which would have been recorded within Star Development's registry in accordance with the terms of Operating Agreement, and shares that are not recorded within the issuer's own registry necessarily do not transfer the title of those shares. Even if the signing of the Operating Agreement and receipt of Pinnacle's check may constitute underlying fraudulent conduct that occurred in the United States, the actual transfer of title did not, under applicable Grenada law and the terms of the Operating Agreement, occur in the United States (if at all). Accordingly, because Goldstein is seeking an extraterritorial application of the statute, the security fraud claims in Counts I and II must be dismissed.

WHEREFORE, Defendants respectfully request that this Court enter an order dismissing the Amended Complaint, with prejudice, and such other and further relief as this Court deems just and proper.

Dated: June 25, 2021                                        Respectfully submitted,

                                                                         **STARK WEBER PLLC**
*Attorneys for Defendants*
1221 Brickell Avenue
Suite 900
Miami, FL 33131
Tel: (305) 377-8788
steve@starkweber.com

By:   s/Steven D. Weber
      Steven D. Weber

---

[2] Nor can Goldstein seek a further opportunity to amend the complaint to plead that such transfer occurred in the United States because, in the original complaint, Goldstein admitted that "20% interest was never recorded in the corporate registry of Star Development Ltd and no shares certificate was ever issued to Plaintiffs." ECF No. [1] ¶ 25.

Fla. Bar. No.: 47543

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this 25th day June, 2021, a copy of the foregoing has been served via the Court's CM/ECF portal to:

Sergiu Gherman
Fla. Bar No. 37031
sgherman@ghermanlaw.com
Gherman Legal Pllc
25 SE 2nd Ave. Ste. 808
Miami FL 33131-1603

*Attorney for Plaintiff*

Paul Aiello
Florida Bar No. 0909033
BENNETT & AIELLO
3471 Main Highway, Suite 206
Coconut Grove, Florida 33133-5929
Phone: (305) 358-9011
Facsimile: (305) 358-9012
paiello@bennettaiello.com

*Attorney for Plaintiff*

By:   s/Steven D. Weber
     Steven D. Weber