**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**(MIAMI)**

**CASE NO. 20-23402-CIV-MARTINEZ-BECERRA**

LEON GOLDSTEIN,

     Plaintiff,

v.

OLEG FIRER, IGOR "GARY" GELMAN, and
STAR EQUITIES, LLC,

     Defendants.

_____/

OLEG FIRER, and IGOR "GARY" GELMAN,

     Counter-Plaintiffs,

v.

LEON GOLDSTEIN,

     Counter-Defendant,

_____/

**DEFENDANTS' AMENDED ANSWER AND**
**AFFIRMATIVE DEFENSES, AND AMENDED COUNTERCLAIM**

     Defendants OLEG FIRER ("**Firer**"), IGOR "GARY" GELMAN ("**Gelman**"), and STAR

EQUITIES, LLC, ("**Star Equities**") (collectively "**Defendants**"), by and through his undersigned

counsel, hereby file this Amended Answer and Affirmative Defenses ("**Answer**") in response to

the Amended Complaint (ECF No. 26, the "**Amended Complaint**").  Any allegations that are not

specifically admitted are denied.

1

1.      Defendants deny the allegations set forth in paragraph 1 of the Amended Complaint except admit that Plaintiff LEON GOLDSTEIN (**"Goldstein"** or "**Plaintiff**") purports to proceed as described therein.

2.      Defendants admit the allegations set forth in paragraph 2 of the Amended Complaint.

3.      Defendants deny the allegations set forth in paragraph 3 of the Amended Complaint.

4.      Defendants deny the allegations set forth in paragraph 4 of the Amended Complaint, except admit that Gelman is residing in the Southern District of Florida.

5.      Defendants deny the allegations set forth in paragraph 5 of the Amended Complaint.

6.      Defendants deny the allegations set forth in paragraph 6 of the Amended Complaint.

7.      Defendants deny the allegations set forth in paragraph 7 of the Amended Complaint.

8.      Defendants deny the allegations set forth in paragraph 8 of the Amended Complaint, except admit that defendants Firer and Gelman previously knew Goldstein.

9.      Defendants deny the allegations set forth in paragraph 9 of the Amended Complaint.

10.      Defendants deny the allegations set forth in paragraph 10 of the Amended Complaint, except admit that a part of Exhibit 1 of the Amended Complaint purports to be a copy of a check payable to the order of Star Equities, LLC.

11.     Defendants deny the allegations set forth in paragraph 11 of the Amended Complaint.

12.     Defendants deny the allegations set forth in paragraph 12 of the Amended Complaint.

13.     Defendants deny the allegations set forth in paragraph 13 of the Amended Complaint.

14.     Defendants deny the allegations set forth in paragraph 14 of the Amended Complaint.

15.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 15 of the Amended Complaint.

16.     In response to paragraph 16 of the Amended Complaint, Defendants incorporate by reference their responses to paragraphs 1 through 14 above as if fully stated herein.

17.     Defendants deny the allegations set forth in paragraph 17 of the Amended Complaint.

18.     Defendants deny the allegations set forth in paragraph 18 of the Amended Complaint.

19.     Defendants deny the allegations set forth in paragraph 19 of the Amended Complaint.

20.     Defendants deny the allegations set forth in paragraph 20 of the Amended Complaint.

21.     Defendants deny the allegations set forth in paragraph 21 of the Amended Complaint.

22.     Defendants deny the allegations set forth in paragraphs 22, 22(a), 22 (b), 22(c), and 22 (d) of the Amended Complaint.

23.     Defendants deny the allegations set forth in paragraph 23 of the Amended Complaint.

24.     Defendants deny the allegations set forth in paragraph 24 of the Amended Complaint.

25.     Defendants deny the allegations set forth in paragraph 25 of the Amended Complaint.

26.     In response to paragraph 26 of the Amended Complaint, Defendants incorporate by reference their responses to paragraphs 1 through 14 and 17 through 25 above as if fully stated herein.

27.     Defendants deny the allegations set forth in paragraph 27 of the Amended Complaint.

28.     Defendants deny the allegations set forth in paragraph 28 of the Amended Complaint.

29.     Defendants deny the allegations set forth in paragraph 29 of the Amended Complaint.

30.     Defendants deny the allegations set forth in paragraph 30 of the Amended Complaint.

31.     Defendants deny the allegations set forth in paragraph 31 of the Amended Complaint.

32.     In response to paragraph 32 of the Amended Complaint, Defendants incorporate by reference their responses to paragraphs 1 through 15 and 17 through 25 above as if fully stated herein.

33.     Defendants deny the allegations set forth in paragraph 33 of the Amended Complaint.

34.     Defendants deny the allegations set forth in paragraph 34 of the Amended Complaint.

35.     In response to paragraph 35 of the Amended Complaint, Defendants incorporate by reference their responses to paragraphs 1 through 14 above as if fully stated herein.

36.     Defendants deny the allegations set forth in paragraph 36 of the Amended Complaint.

37.     Defendants deny the allegations set forth in paragraph 37 of the Amended Complaint.

38.     Defendants deny the allegations set forth in paragraph 38 of the Amended Complaint.

39.     Defendants deny the allegations set forth in paragraph 39 of the Amended Complaint.

40.     Defendants deny the allegations set forth in paragraph 40 of the Amended Complaint.

41.     Defendants deny the allegations set forth in paragraph 41 of the Amended Complaint.

## **AFFIRMATIVE DEFENSES**

In response to the Amended Complaint, Defendants assert the following affirmative defenses.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.  There was no material misrepresentation or omission, or justifiable reliance, because there was no mireprepresentation that Oleg Firer and Gary Gelman had each invested $840,000.00; the $840,000.00 amounts, identified for Oleg Firer and Gary Gelman, on the draft operating agreement allegedly relied upon by Goldstein for his claims were never agreed to, and Goldstein knew it was a draft operating agreement.  Moreover, Goldstein knew that at the time that Goldstein provided the $840,000.00 check from Pinnacle Three Corporation ("**Pinnacle**") to Star Equities that Star Development had not yet acquired the property for the project. In addition, there was no purchase or sale of a security within the United States because there was no transfer of title, that occurred within the United States, of any shares of Star Development to Goldstein.  Additionally, Goldstein did not suffer any economic loss. and there is no loss causation, as the shares of Star Development had and have value and Goldstein never obtained any 20% interest in Star Development that was diluted to circa 5.8% because Goldstein never obtained any shares of Star Development.

## SECOND AFFIRMATIVE DEFENSE

Goldstein lacks standing to bring the claims. Among other things, Goldstein suffered no injury in fact because Pinnacle, and not Goldstein, provided funds in an attempt to purchase shares of Star Development Limited ("**Star Development**").

## THIRD AFFIRMATIVE DEFENSE

Goldstein's claims fail, in whole or in part, because they are dependent on a draft operating agreement for Star Development, attached as Exhibit 1 to the Amended Complaint, which was

never effective because it was never fully executed. Any request for remedies arising out of the operating agreement fail because the operating agreement was never effective.

### FOURTH AFFIRMATIVE DEFENSE

Goldstein's claims are barred in whole or in part by the doctrine of waiver. At least by June 25, 2019, Goldstein received an operating agreement for Star Development that did not show that Firer and Gelman each made contributions to Star Development in the amount of $840,000.00, and Goldstein did not object to such a document. Goldstein was aware of that document by at least June 25, 2019, because Goldstein received it by email from Oleg Khomenko (who Goldstein has known for over 40 years), yet Goldstein (in a way that was clear, unmistakable, and without ambiguity) did not object, Goldstein continued his efforts to become a shareholder of Star Development, and Goldstein intentionally and voluntarily relinquished Goldstein's known rights and with knowledge of this existence of those rights, which would have allowed Goldstein to assert claims against Defendants.

### FIFTH AFFIRMATIVE DEFENSE

Goldstein's claims are barred in whole or in part by the doctrine of estoppel. At least by June 25, 2019, Goldstein received an operating agreement for Star Development that did not show that Firer and Gelman each made contributions to Star Development in the amount of $840,000.00, and Goldstein did not object to such a document. Goldstein was aware of that document by at least June 25, 2019, because Goldstein received it by email from Oleg Khomenko (who Goldstein has known for over 40 years), yet Goldstein (in a way that was clear, unmistakable, and without ambiguity) did not object, Goldstein continued his efforts to become a shareholder of Star Development, Goldstein represented that he would take the necessary steps to become a shareholder of Star Development pursuant to Grenadian law, and Defendants relied on Goldstein's representation.

Goldstein subsequently changed his position such that he failed to take the necessary steps to become a shareholder of Star Development pursuant to Grenadian law, despite his representation that he would do so, and is now asserting that he was defrauded. Defendants changed their positions detrimentally because they agreed to allow Goldstein to be involved in Star Development's project, but now, as a result of Goldstein's failures and accusations, Star Development's shareholders are in conflict, Star Development's business has suffered, and Defendants suffered damages from Goldstein's conduct.

## SIXTH AFFIRMATIVE DEFENSE

Goldstein claims are barred in whole or in part because Defendants did not make any misrepresentations. Among other things, there was no material misrepresentation or omission, or justifiable reliance, because there was no mirepresentation that Oleg Firer and Gary Gelman had each invested $840,000.00; the $840,000.00 amounts, identified for Oleg Firer and Gary Gelman, on the draft operating agreement allegedly relied upon by Goldstein for his claims were never agreed to and Goldstein knew that at the time that Goldstein provided the $840,000.00 check from Pinnacle that Star Development had not yet acquired the property for the project.

## SEVENTH AFFIRMATIVE DEFENSE

Goldstein's claims fail, in whole or in part, under the doctrine of estoppel and because Goldstein did not justifiably rely on any alleged misrepresentation. Goldstein is a multimillionaire that is experienced in investing in commercial and residential real estate and securities. Goldstein knew the draft operating agreement attached as Exhibit 1 to the Amended Complaint was a draft, and Goldstein knew of the operating agreement for Star Development, signed by Firer, Gelman, Oleg Khomenko, and Roman Khomenko, but unsigned by Goldstein, dated December 30, 2017. Goldstein had the opportunity to perform due diligence and seek advice of his own legal, tax and

business advisors before seeking to be involved in Star Development and any exchanges between Defendants and Goldstein were the result of arm's length negotiations conducted with Goldstein.

## EIGHTH AFFIRMATIVE DEFENSE

Goldstein's claims fail in whole or in part because Defendants did not act negligently, with severe recklessness, with intent, or with knowledge when making any alleged misrepresentations to Goldstein. Among other things, there was no material misrepresentation or omission, or justifiable reliance, because there was no mirepresentation that Oleg Firer and Gary Gelman had each invested $840,000.00; the $840,000.00 amounts, identified for Oleg Firer and Gary Gelman, on the draft operating agreement allegedly relied upon by Goldstein for his claims were never agreed to, and Goldstein knew it was a draft operating agreement, and Goldstein knew that at the time that Goldstein provided the $840,000.00 check from Pinnacle to Star Equities that Star Development had not yet acquired the property for the project.

## NINTH AFFIRMATIVE DEFENSE

Goldstein fails to state a claim for controlling persons liability claim in Count II because at all times Firer conducted the affairs of Star Development and Star Equities in good faith and without any reckless conduct.

## TENTH AFFIRMATIVE DEFENSE

Goldstein fails to state a claim for controlling persons liability in Count II because under 15 U.S.C.A. § 78t Goldstein cannot prove a primary violation under federal securities laws.

## ELEVENTH AFFIRMATIVE DEFENSE

Goldstein's claims are barred by the doctrine of laches. More than 2 years prior to the filing of this case, and by at least June 25, 2019, Goldstein knew, or should have known, that Defendants were allegedly committing a violation because by at least June 25, 2019, Goldstein had access to

public documents and other documents concerning Star Development's project and land and Goldstein was in possession of, and knew of, the two partially unsigned draft operating agreements of Star Development and knew of the contents therein.  When Goldstein had access to the public documents and other documents concerning Star Development's project and land, and Goldstein had possession of, and knew of, the two partially unsigned draft operating agreements, Goldstein knew or should have known of the alleged violation.  Goldstein was not diligent in bringing his claims, and  committed an inexcusable delay when Goldstein filed his complaint in August 2020, because more than 2 years and at least more than one year has passed after Goldstein knew or should have known of the alleged violation and Goldstein did discover or a reasonably diligent plaintiff would have discovered the facts constituting the alleged violation.   Goldstein's inexcusable delay caused undue injury and prejudice to Defendants.

## TWELFTH AFFIRMATIVE DEFENSE

Goldstein's claims are barred by the applicable statute of limitations. More than 2 years prior to the filing this case, Goldstein had access to public documents and other documents concerning Star Development's project and land and Goldstein was in possession of, and knew of, the two partially unsigned draft operating agreements of Star Development and knew of the contents therein.  When Goldstein had access to the public documents and other documents concerning Star Development's project and land, and Goldstein had possession of, and knew of, the two partially unsigned draft operating agreements, Goldstein did discover or a reasonably diligent plaintiff would have discovered the facts constituting the alleged violation.

## THIRTEENTH AFFIRMATIVE DEFENSE

Goldstein's claims are barred in whole or in part because Goldstein acted with unclean hands. Goldstein is falsely alleging that he was defrauded of $840,000.00 when those funds were actually

paid by Pinnacle and Goldstein is claiming ownership of such funds based on an unauthorized, sham loan from Pinnacle to Goldstein, which is void for indefiniteness because the alleged loan has no duration.  Furthermore, Goldstein has tortiously interfered with the business relationship between Defendants and Roman Khomenko and Oleg Khomenko (whom Goldstein has known for over 40 years) because Goldstein did not want to pay the amounts involved with, and go through the process of, obtaining the Alien Landholding License, and as an experienced commercial and residential investor Goldstein knew the impact that the coronavirus epidemic would have on Star Development's project.  As a result of Goldstein's conduct, Defendants were injured because Star Development's business has come to a standstill and Goldstein has caused a dispute between Star Development's shareholders.

FOURTEENTH AFFIRMATIVE DEFENSE

Goldstein's claims are barred in whole or in part by the doctrine of *in pari delicto*. Goldstein participated in a wrongdoing when he purposefully decided to stop his process of obtaining an Alien Landholding License because Goldstein did not want to pay the amounts involved with, and go through the process of, obtaining the Alien Landholding License and because Goldstein, and as an experienced investor Goldstein knew the impact that the coronavirus epidemic would have on Star Development's project. As a result of Goldstein's conduct, Star Development's shareholders are in conflict, the project in Grenada became inactive, and Defendants suffered damages.

FIFTEENTH AFFIRMATIVE DEFENSE

Goldstein's securities claims are barred in whole or in part due to lack of subject matter jurisdiction because they seek an extraterritorial application of the applicable laws.  There was no transfer of title, that occurred within the United States, of any shares of Star Development to Goldstein.

SIXTEENTH AFFIRMATIVE DEFENSE

Goldstein's claims fail in whole or in part because Goldstein is a multimillionaire, accredited investor, and an experienced investor in commercial and residential real estate and securities that failed to exercise due diligence in seeking to purchase Star Development's shares.  Among other things, Goldstein could have, or failed to, conduct any due diligence in regards to the value of Star Development, the amounts contributed or invested by the Defendants, the purchase date and/or price of the land acquired by Star Development, and the value of the property purchased by Star Development, and some of that information was either public information, information that Goldstein could obtain, or information that Goldstein knew or should have known.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Goldstein's claims are barred by the doctrine of ratification.  Goldstein knew of the acts complained of in this case, knew that there were two draft operating agreements for Star Development with different amounts, knew that he could reject the operating agreements, knew that he could perform due diligence and learn all material facts about Star Development, and upon learning about the two draft operating agreements, and that the land in which the project was to be build had not yet been acquired, Goldstein continued to take actions in his attempt to become a shareholder of Star Development.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Goldstein failed to mitigate damages because Goldstein began, but then intentionally and voluntarily never completed, the steps necessary for Goldstein to obtain shares in Star Development, which have value, even though the other shareholders encouraged Goldstein to obtain the shares in Star Development.

## NINETEENTH AFFIRMATIVE DEFENSE

If any sums are owed to Goldstein, such sums should be subject to set-off by the losses suffered due to Goldstein failing to take possession of shares of Star Development and Goldstein interfering with the operations of Star Development.

## TWENTIETH AFFIRMATIVE DEFENSE

Goldstein is barred from requesting punitive damages because Defendants actions do not warrant any damages that seek to punish Defendants' conduct. Defendants have at all times acted in good faith compliance with the law: there are no circumstances of fraud, malice, or willful and wanton conduct. Additionally, any request for punitive damages would be disproportionate, as Defendants, due to Star Development's inactivity, suffered losses as a consequence to Goldstein's conduct.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Goldstein's claims are barred in whole or in part because Goldstein acted with unclean hands. Goldstein alleges that Oleksandr Yelizarov orally authorized Pinnacle to make a loan to Goldstein in the amount of $840,000.00 and on terms orally agreed to by Yelizarov and Goldstein.  Such a loan does not exist.  If such a loan exists, then such a loan was made to Goldstein without authorization of the required officers of Pinnacle as Pinnacle testified Firer was an officer and member of Pinnacle and Firer never consented to such a loan.  Defendants were injured as a consequence because Goldstein alleges that he became a shareholder of Star Development through the issuance of an unauthorized loan and is seeking return of funds that do not belong to Goldstein.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Goldstein's claims are barred in whole or in part based on illegality because Goldstein's damages are based on Goldstein allegedly being loaned $840,000.00 based on an alleged oral loan from Pinnacle to Goldstein that is void for indefiniteness.  The alleged oral loan lacks any duration and is therefore unenforceable and void and Goldstein, without authorization from all of Pinnacle's

13

required officers and members, took a blank check from Pinnacle, that had Oleksander Yelizarov's signature on it, and then Goldstein filled in the information on the check to make it a check for $840,000.00 from Pinnacle to Star Equities.

   **WHEREFORE**, Defendants request that the Court enter a judgment against Plaintiff:

a)  That Plaintiff take nothing;

b)  That judgment be entered in favor of Defendants and against Plaintiff;

c)  That any request for punitive damages be denied;

d)  That Defendants be awarded any attorney's fees and costs allowed under Plaintiff's claims and applicable law and Fla. Stat. § 517.211; and

e)  Granting Defendants such other and further relief as this Court may deem just and proper.

### AMENDED COUNTERCLAIM

   Counter-plaintiffs OLEG FIRER ("**Firer**") and IGOR "GARY" GELMAN ( "**Gelman**"). (collectively "**Counter-plaintiffs**"), hereby file this amended counterclaim against Counter-defendant LEON GOLDSTEIN ("**Goldstein**") and in support state as follows:

   1.      In 2017, non-party Oleg Khomenko presented a piece of land for sale in the country of Grenada to Gelman and Firer and non-party Roman Khomenko and suggested that they participate in building a hotel on that piece of land. This project became known as Project Boeuf. Oleg Khomenko and Roman Khomenko (the "**Khomenkos**") sought investors for Project Boeuf.

   2.      In furtherance of Project Boeuf, the Khomenkos, Firer, and Gelman formed Star Development, an entity duly formed under the laws of Grenada.

   3.      Star Development has bylaws, articles of incorporation, and other documents regarding its shareholders and directors that are publicly available for anyone to request.

4.      Goldstein is a multimillionaire that is an experienced investor in commercial and residential real estate and securities.

5.      Firer's and Gelman's participation in Project Boeuf was not a secret and Goldstein could see their participation through social media because Goldstein knew Firer and Gelman. Goldstein has known the Khomenkos for over 40 years.

6.      When Goldstein found out about Project Boeuf, Goldstein (as a multimillionaire, experienced, commercial and residential real estate investor) became interested in being part of it.

7.      In 2017, Goldstein inquired as to the price for percentages of shares in Star Development and also inquired as to the value of the whole project.  In response to Goldstein's inquiry about the project, Gelman told Goldstein that the project is valued at $4,200,000.00, that 20% of the shares of Star Development would cost $840,000.00, that the land would be purchased for approximately one and half million dollars, and that the land was not yet purchased.

8.      Ultimately, Goldstein decided to take part in Star Development's project knowing that Goldstein would need to comply with Grenadian law to become a shareholder, that Goldstein would need to obtain an Alien Landholding License, and that Goldstein would need to pay the amounts, and otherwise comply with the requirements, necessary to obtain an Alien Landholding License.

9.      In furtherance of Goldstein becoming a shareholder of Star Development, Goldstein orally agreed with Firer and Gelman and the Khomenkos that Goldstein would provide $840,000.00 and that Goldstein would comply with the legal requirements imposed by Grenadian law to become a shareholder of Star Development by, among other things, obtaining an Alien Landholding License.

10.     On December 5, 2017, Goldstein provided a check from Pinnacle to Gelman in the amount of $840,000.00.  Prior to Goldstein providing that check to Gelman, Goldstein knew the shareholders of Star Development and Goldstein had ample opportunity to determine the amount of capital contributions to Star Development, who owned the land that was the subject of Star Development's project, the purchase price of the land, the value and potential value of Star Development's project, and all material details related to Star Development and its project.

11.     None of Star Development's shareholders objected to Goldstein receiving shares in Star Development.

12.     On June 25, 2019, Goldstein received from Oleg Khomenko, by email, an operating agreement for Star Development that was signed by the Khomenkos, Firer, and Gelman, dated December 30, 2017, but was unsigned by Goldstein.  That document did not show that Firer and Gelman made capital contributions to Star Development in the amount of $840,000.00, but Goldstein did not object to such a document because Goldstein was already aware of it and already had that document in his possession.

13.     In furtherance of Goldstein becoming a shareholder of Star Development, Oleg Khomenko explained to Goldstein how to apply for and obtain the Alien Landholding License and what documents were needed to prepare it, and, because Goldstein agreed to apply for and obtain the Alien Landholding License, he had already started the process by April 8, 2020.

14.     On April 8, 2020, Goldstein received an email confirming receipt of electronic copies of certain documents in furtherance of Goldstein applying for and obtaining the Alien Landholding License, and asking Goldstein to provide additional, required documents.

15.     Gelman and Oleg Khomenko told Goldstein that Goldstein should come to Grenada to obtain his shares in Star Development.

16.     In February 2020, Oleg Khomenko informed Goldstein about a new agency agreement signed with Colliers International to sell Star Development's project to the clients they have with a price offered of $5.75 million.

17.     Hilton expressed an interest in Star Development's project.

18.     Following April 8, 2020, Goldstein completed some of the steps necessary to obtain an Alien Landholding License, but not all of the steps.

19.     Despite Defendants and the Khomenkos giving assistance to Goldstein, and encouraging Goldstein to obtain his shares in Star Development, Goldstein never completed the process and, thus, Goldstein never received shares in Star Development.

20.     There has never been a transfer of title of any shares in Star Development to Goldstein.

**COUNT ONE**
**BREACH OF ORAL CONTRACT**
**[AGAINST GOLDSTEIN]**

21.     Counter-plaintiffs repeat the allegations of the above paragraphs 1 through 20 of this amended counterclaim as if fully set forth herein.

22.      Goldstein, Firer, and Gelman had a valid oral contract.

23.     The terms of the oral contract between Goldstein and Counter-plaintiffs were that Goldstein would pay $840,000.00 and that Goldstein would comply with the requirements of Grenadian law necessary for Goldstein to become a shareholder of Star Development, including but not limited to Goldstein obtaining an Alien Landholding License. In exchange, Firer and the Khomenkos would transfer ten percent of their shares in Star Development to Goldstein (such that Goldstein would receive total 20% of Star Development's shares). Additionally, Firer, Gelman

and the Khomenkos agreed to accept Goldstein as a new member of Star Development, and involved Goldstein in Star Development's business.

24. Goldstein materially breached the oral agreement because Goldstein refused to complete the process to obtain an Alien Landholding License. Goldstein refused to complete the process because, after Goldstein performed at least some of the requirements to obtain the Alien Landholding License, Goldstein decided that he did not want to pay the amounts required to obtain the Alien Landholding License and complete the process, and Goldstein realized, as an experienced investor in commercial and residential real estate and securities, the impact that the coronavirus epidemic would have on Project Boeuf.

25. Goldstein's material breach of the oral agreement is the proximate cause of damages to Counter-plaintiffs. Counter-plaintiffs have suffered special damages and consequential damages in that Goldstein's conduct has delayed development of Star Development's project, which has deprived Counter-plaintiffs of funds, caused damage to Counter-plaintiffs' reputation and goodwill, and financially damaged Counter-plaintiffs through ending certain of Counter-Plaintiffs' business relationships (outside of Star Development) and preventing Counter-plaintiffs' involvement in projects (unrelated to Star Development) that they sought to be part of.

WHEREFORE, Counter-plaintiffs respectfully request that this Court enter a judgment in their favor and against Goldstein and award Counter-plaintiffs monetary damages, compensatory damages, special damages, consequential damages, accrued interest, incurred costs, pre-judgment interest, post-judgment interest, and any other relief this Court deems just and proper

## COUNT TWO
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS
### [AGAINST GOLDSTEIN]

26.     Counter-plaintiffs repeat the allegations of the above paragraphs 1 through 20 of this amended counterclaim as if fully set forth herein.

27.     Firer and Gelman, together with the Khomenkos, had an existing business relationship, which consisted of Star Development's project in Grenada Project Boeuf.

28.     Goldstein knew of the business relationship between Counter-plaintiffs and the Khomenkos because Goldstein wanted to take part in it by becoming a shareholder of Star Development.

29.     Goldstein knew that he needed to obtain an Alien Landholding License, and pay the amounts required, in order to hold shares in Star Development.  By April 8, 2020, Goldstein had completed some of the steps required to obtain the Alien Landholding License, but Goldstein decided that he did not want to pay the required amounts and go through the process of obtaining it.  Additionally, Goldstein realized, as an experienced investor, the impact that the coronavirus epidemic would have on Project Boeuf.  Thus, Goldstein, for his own personal and pecuniary benefit, intentionally stopped the process to acquire his Alien Landholding License.

30.     Goldstein, acting in his own personal interest, and for his own personal and pecuniary benefit, maliciously, unjustifiably and intentionally interfered with the business relationship between Counter-plaintiffs and the Khomenkos, using improper means, by creating conflict among Counter-plaintiffs and the Khomenkos and placing Star Development's business into a standstill.  Goldstein's conduct was willful, wanton, and outrageous conduct because he engaged in his conduct in an effort to allow him to cease becoming a shareholder and to instead improperly obtain for himself the $840,000.00 which was provided by Pinnacle to Star Equities, when Goldstein was not properly authorized to provide a check from Pinnacle to Star Equities in the first place.

31.     Counter-plaintiffs were and continue to be directly and proximately damaged by Goldstein's intentional tortious interference with Counter-plaintiffs' business and contractual relationships with the Khomenkos.   Among other things, Goldstein's conduct has delayed development of Star Development's project, has caused legal actions between the Khomenkos and Firer, and which has deprived Counter-plaintiffs of funds, caused damage to Counter-plaintiffs' reputation and goodwill, and financially damaged Counter-plaintiffs through ending certain of Counter-Plaintiffs' business relationships (outside of Star Development) and preventing Counter-plaintiffs' involvement in projects (unrelated to Star Development) that they sought to be part of.

WHEREFORE, Counter-plaintiffs respectfully request that this Court enter a judgment in their favor and against Goldstein and award Counter-plaintiffs monetary damages, punitive damages, accrued interest, incurred costs, pre-judgment interest, post-judgment interest, and any other relief this Court deems just and proper.

Dated: March 11, 2022                    By:_____s/ Steven D. Weber_____
                                         Steven D. Weber
                                         Fla. Bar. No.: 47543
                                         **WEBER LAW, P.A.**
                                         1221 Brickell Avenue
                                         Suite 900
                                         Miami, FL 33131
                                         Tel: 305-377-8788
                                         Email: steve@weberlawpa.com
                                                service@weberlawpa.com

                                         *Attorneys for Defendants / Counter-*
                                         *Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 11th day of March, 2022, a copy of the foregoing has been served via the Court's CM/ECF portal to:

Sergiu Gherman, Bar No. 37031
sgherman@ghermanlaw.com

Gherman Legal Pllc
25 SE 2nd Ave. Ste. 808
Miami FL 33131-1603

*Attorneys for Plaintiff / Counter-Defendant*

Paul Aiello
Florida Bar No. 0909033
BENNETT & AIELLO
3471 Main Highway, Suite 206
Coconut Grove, Florida 33133-5929
Phone: (305) 358-9011
Facsimile: (305) 358-9012
paiello@bennettaiello.com
lvargas@bennettaiello.com

*Attorney for Plaintiff / Counter-Defendant*

      32.      By:   s/Steven D. Weber