UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:20-cv-23402-JEM/Becerra

LEON GOLDSTEIN,

    Plaintiff / Counter-Defendant,

v.

OLEG FIRER, *et al*.,

    Defendants / Counter-Plaintiffs.
_____/

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES**

**THIS CAUSE** is before the Court on Plaintiff Leon Goldstein's ("Plaintiff") Motion For Order That Strikes Certain Affirmative Defenses Or Deems Them To Be Denials ("Motion to Strike"). ECF No. [71]. Defendants Igor Gelman ("Gelman"), Oleg Firer ("Firer"), and Star Equities, LLC ("Star Equities") (collectively "Defendants"), filed their Response in Opposition to Plaintiff's Motion to Strike (the "Response"), ECF No. [73]. Plaintiff did not file a reply and the time to do so has passed. Upon due consideration, it is hereby **RECOMMENDED** that Plaintiff's Motion be **GRANTED IN PART AND DENIED IN PART**.

**I.    BACKGROUND**

The Amended Complaint alleges that Defendants Firer and Gelman solicited investors in Moscow, Miami, and Odessa for "Project Boeuf," a hotel that was to be built on a 3.67-acre lot in St. George Parish, Grenada. ECF No. [26] ¶ 7. Defendants Firer and Gelman suggested that Plaintiff should invest in Project Boeuf and assured Plaintiff that they had each already invested $840,000 in the project. *Id.* ¶ 8. The Amended Complaint states that on December 5, 2017,

1

Plaintiff and Defendant Gelman met in Sunny Isles, Florida. *Id.* ¶ 9. At that time, Plaintiff tendered a check to Defendant Gelman in the amount of $840,000, and Defendant Gelman provided the operating agreement for Star Development Limited, the company through which Project Boeuf would be developed. *Id.* ¶ 9. Plaintiff states that the check was from the Pinnacle Three Corporation ("Pinnacle") to Defendant Star Equities because Pinnacle had loaned him the money. *Id.* ¶¶ 9–10. The Amended Complaint alleges that the operating agreement contained false statements that Defendants Firer and Gelman had each contributed $840,000 when in fact neither of them had made any capital contributions to the company. *Id.* Plaintiff states that he was led to believe that he was purchasing an interested in Star Development worth $840,000 but in reality, the interest did not have any value." *Id.* ¶13. The Amended Complaint also alleges that the $840,000 payment was the result of Plaintiff's "reasonable belief in the truthfulness of Defendants' representations." *Id.* ¶14.

Based upon these facts, the Amended Complaint asserts: (1) one count for violation of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5 against all Defendants (Count I); (2) one count for liability of controlling persons, 15 U.S.C. § 78t against Defendant Firer (Count II); (3) one count for violation of Florida's Securities Investor Protection Act, Fla. Stat. § 517.011, *et seq.*, against all Defendants (Count III); and (4) one count for fraudulent misrepresentation against all Defendants (Count IV). ECF No. [26]. Defendants assert twenty-two affirmative defenses. ECF No. [66] at 6–14. Plaintiff requests that nine of those affirmative defenses be deemed denials and three be stricken. ECF No. [71] at 1. Specifically, Plaintiff contends that the following affirmative defenses should be deemed denials: the First Affirmative Defense (failure to state a claim), the Third Affirmative Defense (operating agreement not effective), the Sixth Affirmative Defense (no misrepresentations), the Seventh Affirmative

Defense (estoppel), the Eighth Affirmative Defense (no material misrepresentations), the Ninth Affirmative Defense (failure to state a claim), the Tenth Affirmative Defense (failure to state a claim), the Fifteenth Affirmative Defense (no subject matter jurisdiction), and the Twentieth Affirmative Defense (no punitive damages). *Id.* at 2–7. Plaintiff further argues that the following affirmative defenses should be stricken: the Fourteenth Affirmative Defense (*in pari delicto*), the Twenty-First Affirmative Defense (unclean hands), and the Twenty-Second Affirmative Defense (illegality) should be stricken. *Id.* at 6–8.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(f) provides that a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although the district courts are afforded broad discretion, striking is considered a drastic remedy that is often disfavored. *Birren v. Royal Caribbean Cruises, Ltd.*, 336 F.R.D. 688, 691 (S.D. Fla. 2020) (citing *Thompson v. Kindred Nursing Ctrs. E., LLC*, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002)). As such, affirmative defenses should only be stricken if they are insufficient as a matter of law. *Morrison v. Executive Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1318 (S.D. Fla. 2005) (citing *Anchor Hocking Corp. v. Jacksonville Elec. Auth.*, 419 F. Supp. 992, 1000 (M.D. Fla. 1976)). An affirmative defense is insufficient as a matter of law "if, on the face of the pleadings, it is patently frivolous, or if it is clearly invalid as a matter of law." *Id.* (quoting *Anchor Hocking Corp.*, 419 F. Supp. at 1000). In addition, a court should strike ambiguous affirmative defenses that do not respond to any count or allegation. ECF No. [73] at 3 (citing *Morrison*, 434 F. Supp. 2d at 1318).

### III.   ANALYSIS

#### A. Defendants' First, Third, and Tenth Affirmative Defenses

For ease of reference, Defendants' First, and Tenth Affirmative Defenses, in their entirety, state as follows:

> First Affirmative Defense.  The Complaint fails to state a claim upon which relief may be granted.  There was no material misrepresentation or omission, or justifiable reliance, because there was no misrepresentation that Oleg Firer and Gary Gelman had each invested $840,000.00; the $840,000.00 amounts, identified for Oleg Firer and Gary Gelman, on the draft operating agreement allegedly relied upon by Goldstein for his claims were never agreed to, and Goldstein knew it was a draft operating agreement.  Moreover, Goldstein knew that at the time that Goldstein provided the $840,000.00 check from Pinnacle Three Corporation ("Pinnacle") to Star Equities that Star Development had not yet acquired the property for the project.  In addition, there was no purchase or sale of a security within the United States because there was no transfer of title, that occurred within the United States, of any shares of Star Development to Goldstein.  Additionally, Goldstein did not suffer any economic loss. and there is no loss causation, as the shares of Star Development had and have value and Goldstein never obtained any 20% interest in Star Development that was diluted to circa 5.8% because Goldstein never obtained any shares of Star Development.
>
> Third Affirmative Defense.  Goldstein's claims fail, in whole or in part, because they are dependent on a draft operating agreement for Star Development, attached as Exhibit 1 to the Amended Complaint, which was never effective because it was never fully executed.  Any request for remedies arising out of the operating agreement fail because the operating agreement was never effective.
>
> Tenth Affirmative Defense.  Goldstein fails to state a claim for controlling persons liability in Count II because under 15 U.S.C.A. § 78t Goldstein cannot prove a primary violation under federal securities laws.

ECF No. [66] at 6–7, 9.

Plaintiff argues that the First Affirmative Defense should be deemed a denial because it is a "recitation of the standard for Rule 12(b)(6) dismissal followed by denials of paragraphs 8–14 and 21–25 of the Amended Complaint." ECF No. [71] at 10.  As to the Third Affirmative Defense, Plaintiff also argues that it is a "rewording of the Rule 12(b)(6) failure to state a claim standard."

4

*Id.* Plaintiff further argues that the Tenth Affirmative Defense should be deemed a denial because it merely contests the allegations of the Amended Complaint. *Id.* at 11–12.

Defendants argue that the First Affirmative Defense is not a denial because it provides additional facts to avoid liability. ECF No. [73] at 3–4. In addition, Defendant argues that the Third Affirmative Defense is properly pled because it contests whether the document attached to the Complaint serves as a basis for liability. *Id.* at 4–5. Finally, Defendants argue that the Tenth Affirmative Defense should not be deemed a denial because it makes a legal argument that Plaintiff cannot satisfy the claim's statutory requirements. *Id.* at 6–7.

The First, Third, and Tenth Affirmative Defenses should be stricken, and these defenses should be deemed denials. An affirmative defense admits an allegation in the complaint "but avoids liability, wholly or partly, by new allegations of excuse, justification, or other negating matters." *Adams v. Jumpstart Wireless Corp.*, 294 F.R.D. 668, 671 (S.D. Fla. 2013) (citing *Royal Palm Sav. Ass'n v. Pine Trace Corp.*, 716 F. Supp. 1416, 1420 (M.D. Fla. 1989)). However, a defense that highlights a defect in the complaint or the lack of evidence in support of the allegation is not an affirmative defense. *McMullen v. GEICO Indem. Co.*, No. 14-CIV-62467, 2015 WL 11199534, at *2 (S.D. Fla. Jan. 13, 2015) (citing *Royal Caribbean Cruises, Ltd. v. Jackson*, 921 F. Supp. 2d 1366, 1372 (S.D. Fla. 2013)). As such, an affirmative defense that disputes the allegations stated in the complaint is more appropriately treated as a denial. *Id.* (citing *Home Mgmt. Solutions, Inc. v. Prescient, Inc.*, 2007 WL 2412834, at *3 (S.D. Fla. Aug. 21, 2007)). Indeed, "[f]ailure to state a claim is not an affirmative defense." *Havana Docks Corp. v. Carnival Corp.*, No. 19-CV-21724, 2022 WL 831160, at *79 (S.D. Fla. Mar. 21, 2022), *motion to certify appeal denied*, No. 19-CV-21724, 2022 WL 1522007 (S.D. Fla. May 13, 2022).

The First and Third Affirmative Defenses merely deny the allegations in the Amended Complaint and argue that Plaintiff cannot establish his *prima facie* case. Moreover, the Tenth Affirmative Defense argues that Plaintiff has failed to state a claim because he cannot prove a statutory violation based on the facts alleged. *See In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1276 (11th Cir. 2016) ("For control-person liability, a plaintiff must allege: (1) a primary violation of federal securities laws, and; (2) that the defendant exercised actual power or control over the primary violator.") (quotations omitted). Because these affirmative defenses provide that Plaintiff's claim fails on the facts alleged, they are simply not affirmative defenses but should instead be treated as denials. *See Boldstar Tech., LLC v. Home Depot, Inc.*, 517 F. Supp. 2d 1283, 1292 (S.D. Fla. 2007) ("Failure to state a claim is a defect in the plaintiff's claim; it is not an additional set of facts that bars recovery notwithstanding the plaintiff's valid prima facie case. Therefore, it is not properly asserted as an affirmative defense."). As a result, Plaintiff's Motion as to the First, Third, and Tenth Affirmative Defenses should be **GRANTED**, and these defenses should be deemed denials.

### B. Defendant's Sixth, Seventh, Eighth, And Fifteenth Affirmative Defenses

For ease of reference, Defendants' Sixth, Seventh, Eighth, and Fifteenth Affirmative Defenses, in their entirety, state as follows:

> Sixth Affirmative Defense. Goldstein claims are barred in whole or in part because Defendants did not make any misrepresentations. Among other things, there was no material misrepresentation or omission, or justifiable reliance, because there was no misrepresentation that Oleg Firer and Gary Gelman had each invested $840,000.00; the $840,000.00 amounts, identified for Oleg Firer and Gary Gelman, on the draft operating agreement allegedly relied upon by Goldstein for his claims were never agreed to and Goldstein knew that at the time that Goldstein provided the $840,000.00 check from Pinnacle that Star Development had not yet acquired the property for the project.
>
> Seventh Affirmative Defense. Goldstein's claims fail, in whole or in part, under the doctrine of estoppel and because Goldstein did not justifiably rely on any

6

    alleged misrepresentation. Goldstein is a multimillionaire that is experienced in investing in commercial and residential real estate and securities. Goldstein knew the draft operating agreement attached as Exhibit 1 to the Amended Complaint was a draft, and Goldstein knew of the operating agreement for Star Development, signed by Firer, Gelman, Oleg Khomenko, and Roman Khomenko, but unsigned by Goldstein, dated December 30, 2017. Goldstein had the opportunity to perform due diligence and seek advice of his own legal, tax and business advisors before seeking to be involved in Star Development and any exchanges between Defendants and Goldstein were the result of arm's length negotiations conducted with Goldstein.

    <u>Eighth Affirmative Defense</u>.  Goldstein's claims fail in whole or in part because Defendants did not act negligently, with severe recklessness, with intent, or with knowledge when making any alleged misrepresentations to Goldstein. Among other things, there was no material misrepresentation or omission, or justifiable reliance, because there was no misrepresentation that Oleg Firer and Gary Gelman had each invested $840,000.00; the $840,000.00 amounts, identified for Oleg Firer and Gary Gelman, on the draft operating agreement allegedly relied upon by Goldstein for his claims were never agreed to, and Goldstein knew it was a draft operating agreement, and Goldstein knew that at the time that Goldstein provided the $840,000.00 check from Pinnacle to Star Equities that Star Development had not yet acquired the property for the project.

    <u>Fifteenth Affirmative Defense</u>.  Goldstein's securities claims are barred in whole or in part due to lack of subject matter jurisdiction because they seek an extraterritorial application of the applicable laws. There was no transfer of title, that occurred within the United States, of any shares of Star Development to Goldstein.

ECF No. [66] at 8–9, 11–12.

Plaintiff argues the Sixth Affirmative Defendant improperly denies that any misrepresentations were made by Defendants Firer and Gelman. ECF No. [71] at 10–11. As to the Seventh Affirmative Defense, Plaintiff argues that it is a denial of the reliance allegations in the Amended Complaint. *Id.* at 11. As to the Eighth Affirmative Defense, Plaintiff argues that it is an attempt to deny the intent element within the claims asserted by the Amended Complaint." *Id.* As to the Fifteenth Affirmative Defense, Plaintiff argues that it is merely a denial of the elements of Plaintiff's claims, and it restates arguments already rejected by this Court. *Id.* at 12.

Defendants argue that the Sixth and Eighth Affirmative Defenses were properly pled because they set forth that there was never an effective document upon which claims for fraudulent misrepresentation could be based. ECF No. [73] at 5. Defendants argue that the Seventh Affirmative Defense is properly pled because it concerns estoppel. *Id.* at 5–6. Finally, Defendants argue that they are not precluded from asserting the Fifteenth Affirmative Defense simply because it was previously rejected by the Court. *Id.* at 7–8.

The Sixth, Seventh, and Eighth Affirmative Defense should be deemed denials because they dispute Defendants' liability by pointing out defects in the Second Amended Complaint. Specifically, the Sixth and Eight Affirmative Defenses highlights defects in the Complaint by emphasizing the lack of evidence in support of the claims asserted, stating that there were no misrepresentations, omissions, or deception, and as such, that Plaintiff is unable to state a claim for relief. The Seventh Affirmative Defense, although labeled as estoppel, is in fact a challenge to whether the Amended Complaint sufficiently establishes justifiable reliance as an element of misrepresentation. Thus, Defendants are in fact taking issue with Plaintiff's *prima facie* case such that the Motion as to the Sixth, Seventh, and Eighth Affirmative Defenses should be **GRANTED**, and these affirmative defenses should be deemed denials. *See Pujals ex rel. El Rey De Los Habanos, Inc. v. Garcia*, 777 F. Supp. 2d 1322, 1328 (S.D. Fla. 2011) (noting that "[a] defense which points out a defect in the Plaintiff's prima facie case is not an affirmative defense" but is instead a denial) (alteration supplied) (quoting *In re Rawson Food Serv. Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1989)); *Bluewater Trading LLC v. Willmar USA, Inc.*, No. 07-61284-CIV, 2008 WL 4179861, at *2 (S.D. Fla. Sept. 9, 2008) (concluding that an affirmative defense, which provides that plaintiff has failed to state a claim, is in fact a denial).

The Fifteenth Affirmative Defense that this Court lacks subject matter jurisdiction should be stricken because such a defense "may be raised at any time, and consequently, it is not an affirmative defense." *BPI Sports, LLC v. ThermoLife Int'l, LLC*, No. 19-CV-60505, 2021 WL 966011, at *4 (S.D. Fla. Mar. 5, 2021), *report and recommendation adopted*, No. 19-60505-CIV, 2021 WL 965746 (S.D. Fla. Mar. 15, 2021); *Bernal v. All Am. Inv. Realty, Inc.*, No. 05-60956-CIV, 2006 WL 8431426, at *2 (S.D. Fla. Jan. 17, 2006) (striking lack of subject matter jurisdiction as an affirmative defense). Indeed, Defendants have filed two motions to dismiss setting forth this argument, and in both instances, the argument was rejected by the Court. Accordingly, the Fifteenth Affirmative Defense should be **STRICKEN**.

**C. Defendants' Ninth And Twentieth Affirmative Defenses**

For ease of reference, Defendants' Ninth and Twentieth Affirmative Defenses, in their entirety, state as follows:

> <u>Ninth Affirmative Defense</u>. Goldstein fails to state a claim for controlling persons liability claim in Count II because at all times Firer conducted the affairs of Star Development and Star Equities in good faith and without any reckless conduct.
>
> <u>Twentieth Affirmative Defense</u>. Goldstein is barred from requesting punitive damages because Defendants actions do not warrant any damages that seek to punish Defendants' conduct. Defendants have at all times acted in good faith compliance with the law: there are no circumstances of fraud, malice, or willful and wanton conduct. Additionally, any request for punitive damages would be disproportionate, as Defendants, due to Star Development's inactivity, suffered losses as a consequence to Goldstein's conduct.

ECF No. [66] at 9, 13.

Plaintiff argues that the Ninth Affirmative Defense should be deemed a denial because it denies the allegations in the Amended Complaint and does not set forth what type of conduct would constitute good faith. ECF No. [71] at 12. As to the Twentieth Affirmative Defense, Plaintiff argues that it is merely a denial of the allegations in the Complaint with respect to punitive

damages. *Id.* 12–13. Defendants argue that the Nineth and Twentieth Affirmative Defenses are properly pled because they set forth the good faith exception, which has been accepted as an affirmative defense. ECF No. [73] at 6, 8–9.

The Court agrees with Defendants that the Ninth Affirmative Defense, which states that Plaintiff cannot establish liability of controlling persons because Defendant Firer acted in good faith and without reckless conduct, is proper. Under 15 U.S.C. § 78t(a), "a controlling person is liable to the plaintiff jointly and severally with and to the same extent as a controlled person for the controlled person's acts, unless the controlling person can establish the affirmative defense of good faith and non-inducement." *Laperriere v. Vesta Ins. Group, Inc.*, 526 F.3d 715, 721 (11th Cir. 2008). Thus, in order to disprove statutory liability, the defendant is required to assert the affirmative defenses of good faith and lack of recklessness. *Id.* at 722 ("Specifically, a defendant must prove that it did not act in bad faith or with a recklessness that equates to inducing the acts constituting a securities law violation."). Because the Ninth Affirmative Defense has been properly pled within the context of the statutory requirements, Plaintiff's Motion to deem this affirmative defense a denial should be **DENIED**.

Moreover, as to the Twentieth Affirmative Defense, good faith is a classic affirmative defense to any claim for punitive damages. *Hilger v. Velazquez*, No. 10-20638-CIV, 2011 WL 13071723, at *3 (S.D. Fla. Sept. 12, 2011). Under this defense, Plaintiff would not be able to recover punitive damages for Defendants' alleged misrepresentations to the extent they did not act with malice. *See Gibson v. JetBlue Airways Corp.*, No. 618CV1742ORL40TBS, 2019 WL 3206925, at *4 (M.D. Fla. July 16, 2019) ("The good faith defense may serve to reduce damages even if everything alleged in the Complaint is true.") (quotation omitted). Because the Twentieth

Affirmative Defense was properly pled in response to Plaintiff's request for punitive damage, Plaintiff's Motion to deem this affirmative defense a denial should also be **DENIED**.

### D. Defendants' Fourteenth, Twenty-First And Twenty-Second Affirmative Defense

Defendants' Fourteenth, Twenty-First and Twenty-Second Affirmative Defenses state, in their entirety, as follows:

> Fourteenth Affirmative Defense. Goldstein's claims are barred in whole or in part by the doctrine of *in pari delicto*. Goldstein participated in a wrongdoing when he purposefully decided to stop his process of obtaining an Alien Landholding License because Goldstein did not want to pay the amounts involved with, and go through the process of, obtaining the Alien Landholding License and because Goldstein, and as an experienced investor Goldstein knew the impact that the coronavirus epidemic would have on Star Development's project. As a result of Goldstein's conduct, Star Development's shareholders are in conflict, the project in Grenada became inactive, and Defendants suffered damages.
>
> Twenty-First Affirmative Defense. Goldstein's claims are barred in whole or in part because Goldstein acted with unclean hands. Goldstein alleges that Oleksandr Yelizarov orally authorized Pinnacle to make a loan to Goldstein in the amount of $840,000.00 and on terms orally agreed to by Yelizarov and Goldstein. Such a loan does not exist. If such a loan exists, then such a loan was made to Goldstein without authorization of the required officers of Pinnacle as Pinnacle testified Firer was an officer and member of Pinnacle and Firer never consented to such a loan. Defendants were injured as a consequence because Goldstein alleges that he became a shareholder of Star Development through the issuance of an unauthorized loan and is seeking return of funds that do not belong to Goldstein.
>
> Twenty-Second Affirmative Defense. Goldstein's claims are barred in whole or in part based on illegality because Goldstein's damages are based on Goldstein allegedly being loaned $840,000.00 based on an alleged oral loan from Pinnacle to Goldstein that is void for indefiniteness. The alleged oral loan lacks any duration and is therefore unenforceable and void and Goldstein, without authorization from all of Pinnacle's required officers and members, took a blank check from Pinnacle, that had Oleksander Yelizarov's signature on it, and then Goldstein filled in the information on the check to make it a check for $840,000.00 from Pinnacle to Star Equities.

ECF No. [66] at 11, 13–14.

Plaintiff first argues that the Fourteenth Affirmative Defense should be stricken because it fails to state facts establishing that he was in any way complicit in Defendants' misrepresentations

11

regarding their capital contributions in Star Development. ECF No. [71] at 13–14. Plaintiff argues that the Twenty-First Affirmative Defense should be stricken because it is duplicative of the Thirteenth Affirmative Defense, which states that Plaintiff acted with unclean hands with respect to his sham loan from Pinnacle and his tortious interference with Defendants' business relationship. *Id.* at 14. Plaintiff further argues that the Twenty-Second Affirmative Defense should be stricken because it is duplicative of the Second Affirmative Defense for lack of standing and it is a contract defense improperly asserted against tort claims. *Id.* at 14.

Defendants respond that the Fourteenth Affirmative Defense is properly pled because as a result of Plaintiff Goldstein's conduct, their project in Grenada is in a standstill. *Id.* at 9–10. As to the Twenty-First Affirmative Defense, Defendants argue that it is properly "centered on the nature of the alleged loan that Goldstein alleges he obtained to attempt to purchase the shares in Star Development." *Id.* at 11. Finally, as to the Twenty-Second Affirmative Defense, Defendants argue that it should not be stricken because "the defense is an avoidance in that even if Goldstein's claims are correct, he did not suffer any damages because he never had any right to possess the $840,000.00 in the first place and he did not give it." *Id.* at 12.

As an initial matter, in the securities context, the *in pari delicto* affirmative defense is available "only where (1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress, and (2) preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public." *Pinter v. Dahl*, 486 U.S. 622, 633 (1988). The Amended Complaint in this case asserts that Defendants engaged in securities fraud when they sold unregistered securities. The claims asserted by Plaintiff relate to the circumstances of his initial investment in Star Development. The Fourteenth Affirmative Defense is not related in any way

to Plaintiff's initial investment. Instead, it alleges that Defendants cannot be liable for securities fraud because Plaintiff later took actions that led to the business's downfall. Because Defendants do not assert that Plaintiff engaged in any wrongdoing with respect to the violations he seeks to redress, Defendants have failed to assert an *in pari delicto* defense. Accordingly, the Fourteenth Affirmative Defense should be **STRICKEN**.

The Twenty-First Affirmative Defense, however, was properly plead. It is clearly established that the doctrines of unclean hands and illegality are affirmative defenses. *See USA Nutraceuticals Group, Inc. v. BPI Sport*s, LLC, 165 F. Supp. 3d 1256, 1273 (S.D. Fla. 2016) ("[T]he affirmative defense of unclean hands requires the proponent to show that (1) the plaintiff's wrongdoing is directly related to the claim, and (2) that "the defendant was personally injured by the wrongdoing.") (quotation omitted); *Sream, Inc. v. Vasumati, LLC*, No. 16-14442-CIV, 2018 WL 11353290, at *3 (S.D. Fla. Mar. 22, 2018) ("Illegality is one of the 18 enumerated affirmative defenses listed in Rule 8(c)") (quotation marks omitted). Plaintiff argues that the Twenty-First Affirmative Defense regarding the alleged unauthorized loan from Pinnacle is duplicative of the Thirteenth Affirmative Defense regarding Plaintiff's alleged tortious interference. However, the Court finds that these two affirmative defenses are distinct. Specifically, the Thirteenth Affirmative Defense states that the loan from Pinnacle is void for indefiniteness because it has no duration and that Plaintiff Goldstein tortiously interfered with the Defendants' business relationships. ECF No. [66] at 10–11. This is distinct from the Twenty-First Affirmative Defense, which relates to whether the loan from Pinnacle was authorized. *Id.* at 13. Because the Twenty-First Affirmative Defense is not duplicative of the Thirteenth Affirmative Defense, Plaintiff's Motion with respect to this defense is **DENIED**.

Plaintiff argues that the Twenty-Second Affirmative Defenses should be stricken because it is duplicative of the Second Affirmative Defense. This argument fails because the Twenty-Second Affirmative Defense states that the loan from Pinnacle is void, whereas the Second Affirmative Defense states that Plaintiff does not have standing because it was Pinnacle who suffered the loss of the initial capital contribution. *Id.* at 6, 13–14. However, the Twenty-Second Affirmative Defense should be stricken in any event because illegality is a contract defense and none of the claims asserted in this action are predicated upon a breach of contract theory. *See, e.g.*, *Weisler v. Safeco Ins. Co. of Illinois*, No. 14-CV-81107, 2015 WL 11281290, at *3 (S.D. Fla. Apr. 9, 2015) (concluding that affirmative defenses that relate to claims for breach of contract do not apply to tort claims). Accordingly, the Twenty-Second Affirmative Defense should be **STRICKEN**.

## IV.   RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's Motion to Strike, ECF No. [71], be **GRANTED IN PART AND DENIED IN PART**. Specifically, the First, Third, Sixth, Seventh, Eighth, Tenth, Affirmative Defenses should be deemed denials and the Fourteenth, Fifteenth and Twenty-Second Affirmative Defenses should be stricken.

## V.   OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the District Judge within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal

conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on June 17, 2022.

_____
**JACQUELINE BECERRA**
**United States Magistrate Judge**