UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:20-cv-23402-JEM/Becerra

LEON GOLDSTEIN,

    Plaintiff / Counter-Defendant,

v.

OLEG FIRER, *et al.*,

    Defendants / Counter-Plaintiffs.
_____/

**REPORT AND RECOMMENDATION[1] ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court on Defendants Oleg Firer ("Firer"), Igor "Gary" Gelman ("Gelman"), and Star Equities, LLC's ("Star Equities") (collectively, "Defendants") Motion for Summary Judgment and Incorporated Memorandum of Law (the "Motion"), ECF No. [89]. Defendants filed an accompanying Statement of Material Facts, ECF No. [88]. Plaintiff Leon Goldstein ("Goldstein" or "Plaintiff") filed a Response in Opposition (the "Response"), ECF No. [94], and an Opposing Statement of Material Facts, ECF No. [93]. Defendants filed a Reply (the "Reply"), ECF No. [96], and a Reply Statement of Material Facts, ECF No. [97]. Upon due consideration of the Motion, the pertinent portions of the record, and being otherwise fully advised on the premises, it is hereby **RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED IN PART AND DENIED IN PART**.

---

[1] The Honorable Jose E. Martinez referred this action to the undersigned for "all pretrial, non-dispositive matters and matters otherwise consented to, [ECF No. 16], and for a Report and Recommendation on all dispositive matters not consented to by the parties." ECF No. [39].

1

## I. BACKGROUND

### A. Summary of Undisputed Facts

In 2017, Oleg Khomenko presented Defendant Gary Gelman ("Gelman"), Defendant Oleg Firer ("Firer"), and Roman Khomenko with a piece of land for sale in Grenada. ECF Nos. [88] ¶ 1; [93] ¶ 1. Oleg Khomekno suggested that Gelman, Firer, and Roman Khomenko participate in building a hotel on that piece of land. ECF Nos. [88] ¶ 1; [93] ¶ 1. The project became known as "Project Boeuf." ECF Nos. [88] ¶ 2; [93] ¶ 2. Defendants assert that they, along with Oleg Khomenko and Roman Khomenko, formed a company called Star Development Ltd. for the purpose of consummating the land acquisition and development of Project Bouef. ECF No. [88] ¶ 3. Although the facts surrounding the formation of Star Development Ltd. are disputed, it is undisputed that Plaintiff was not one of the initial members or shareholders of Star Development Ltd. ECF Nos. [88] ¶¶ 3–4; [93] ¶¶ 3–4. Indeed, Plaintiff held no interest in Star Development Ltd. at the time of its formation or thereafter. ECF Nos. [88] ¶ 4; [93] ¶ 4.

On December 5, 2017, Plaintiff was presented with an opportunity to participate in Project Boeuf. The Parties dispute who initiated the transaction, when the first conversation occurred, and the details surrounding the meeting between Plaintiff and Defendant(s) on that date. However, there is no dispute that as of that date Plaintiff knew that the land had not yet been acquired. ECF Nos. [88] ¶ 7; [93] ¶ 7. Plaintiff wrote a check in the amount of $840,000.00 to Star Equities and gave Gelman that check. *Id.* The check was from an entity entitled Pinnacle Three Corporation ("Pinnacle"). ECF Nos. [88] ¶ 11; [93] ¶ 11. At that time, Plaintiff had no role or position with Pinnacle. ECF Nos. [88] ¶ 10; [93] ¶ 10. Plaintiff himself did not have $840,000.00 when he gave the Pinnacle check to Gelman. ECF Nos. [88] ¶ 12; [93] ¶ 12. Plaintiff has not paid the $840,000.00 to Pinnacle, and there is no due date for him to do so. ECF Nos. [88] ¶¶ 13, 14; [93]

¶¶ 13, 14.  There are no documents, apart from the check itself, that show any terms for a loan, and no tax returns reflect the loan.  ECF Nos. [88] ¶¶ 15, 16; [93] ¶¶ 15, 16.  Plaintiff asserts, and Defendant disputes, that the check itself is evidence of the terms of the loan, including the amount, lender, and purpose of funds.  ECF Nos. [88] ¶ 16; [93] ¶ 16.

Shortly after writing the check, in December 2017, Plaintiff was presented with a document titled "Operating Agreement," for Star Development Ltd., which Plaintiff then signed.  ECF Nos. [88] ¶ 17; [93] ¶ 17.  The Parties dispute whether the agreement was a draft or final version.  *Id.*  Defendants contend that the agreement was only a draft, and Plaintiff contends that the agreement was presented to him as the final Operating Agreement.  *Id.*  The document was never signed by Oleg Khomenko and Roman Khomenko.  ECF Nos. [88] ¶ 18; [93] ¶ 18.

On June 25, 2019, Oleg Khomenko e-mailed Plaintiff another document titled "Operating Agreement," which was dated December 30, 2017, and signed by Oleg Khomenko, Roman Khomenko, Firer, and Gelman.  ECF Nos. [88] ¶ 19; [93] ¶ 19.  The Parties dispute whether Plaintiff ever received this document prior to 2019 and whether he viewed it prior to 2020.

It is now undisputed that Plaintiff never received shares in Star Development Ltd.  ECF Nos. [88] ¶ 24; [93] ¶ 24.  He was never issued a Certificate of New Membership.  ECF Nos. [88] ¶ 25; [93] ¶ 25.  Indeed, Plaintiff is not, and never was, a shareholder or member of Star Development Ltd.  ECF Nos. [88] ¶ 26; [93] ¶ 26.  Thus, he never received the twenty percent interest in Star Development Ltd.  ECF Nos. [88] ¶ 27; [93] ¶ 27.  The Parties dispute the value of shares in Star Development Ltd. at all times material to this action.

Although the timing of this is disputed, Plaintiff learned that he needed to obtain an Alien Landholding License to obtain shares in Star Development Ltd.  ECF Nos. [88] ¶ 20; [93] ¶ 20.  Plaintiff began, but did not complete, the process to obtain the Alien Landholding License, and never received the Alien Landholding License.  ECF Nos. [88] ¶¶ 21, 23; [93] ¶¶ 21, 23.  Plaintiff

3

alleges that he ceased the application once he learned of Defendants' fraudulent actions. Defendants dispute this and allege that Plaintiff voluntarily ceased the process to obtain the Alien Landholding License. ECF Nos. [88] ¶ 23; [93] ¶ 65.

Plaintiff alleges he suffered an economic loss of $840,000.00 with 12% interest as a result of Defendants in this case. ECF Nos. [88] ¶ 34; [93] ¶ 34. Defendants dispute that Plaintiff actually suffered that, or any, loss.

### B. Instant Motion

Defendants now move for summary judgment on all counts of Plaintiff's Amended Complaint, ECF No. [26], despite styling the Motion as one for "partial summary judgment". ECF No. [89]. The Amended Complaint includes the following counts: a violation of the Securities Exchange Act of 1934 against all Defendants (Count I); a count for Liability of Controlling Persons against Defendant Firer under 15 U.S.C. § 78t (Count II); a violation of Florida's Securities Investor Protection Act against all Defendants (Count III); and a fraudulent misrepresentation count against all Defendants (Count IV). ECF No. [26]. Defendants argue that summary judgment is proper because: (1) there was no misrepresentation to Plaintiff that the land that is the subject of Project Boeuf was already acquired as of December 5, 2017; (2) Plaintiff's securities claims seek an impermissible extraterritorial application of the law; and (3) Plaintiff cannot demonstrate damages or loss causation as to any of his claims. ECF No. [89] at 2.

Plaintiff responds that summary judgment is not proper because: (1) there are disputed facts regarding the misrepresentations that are the basis of the claim; (2) Plaintiff's securities claims do not seek an impermissible extraterritorial application of the law because the sale was consummated in Florida; and (3) Plaintiff can prove damages because he would not have invested $840,000.00 had he known the truth about the facts that Defendants misrepresented. ECF No. [94] at 2–3. Defendants' Reply reiterates their arguments that there was no misrepresentation about the prior

purchase of land as of December 5, 2017, and that Plaintiff cannot show damages or loss causation. ECF No. [96]. Defendants also assert that there is binding precedent requiring this Court to find in their favor on the extraterritoriality issue. *Id.*

## II.    LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* FED R. CIV. P. 56. A genuine issue of material fact exists when "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "For factual issues to be considered genuine, they must have a real basis in the record." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted). Speculation or conjecture cannot create a genuine issue of material fact sufficient to defeat a well-supported motion for summary judgment. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). In assessing whether the moving party has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to come forward with evidence showing a genuine issue of material fact that precludes summary judgment. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); *see also* FED. R. CIV. P. 56(e). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992). But if the record, taken as a whole, cannot lead a rational trier of fact to find for the non-moving party, there

5

is no genuine issue for trial, and summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. ANALYSIS

As noted above, Defendants move for summary judgment on all counts of Plaintiff's Amended Complaint. ECF No. [89]. Defendants argue that: (1) there was no misrepresentation to Plaintiff that the land that is the subject of Project Boeuf was already acquired as of December 5, 2017; (2) Plaintiff's securities claims seek an impermissible extraterritorial application of the law; and (3) Plaintiff cannot demonstrate damages or loss causation as to any of his claims. *Id.* The undersigned will address each in turn.

#### A. Defendants Are Not Entitled To Summary Judgment On A "Portion" of Counts I, II, III or IV.

Defendants first argue that they are entitled to summary judgment on the portion of Counts I, II, III and IV as they relate to the undisputed fact that there was no misrepresentation to Plaintiff that the Project Boeuf land was already acquired as of December 5, 2017. ECF No. [89] at 4. Plaintiff responds that his claims do not rely on this one misrepresentation. ECF No. [94] at 2. Indeed, the claims are based on other alleged misrepresentations, which remain disputed. *Id.* Specifically, Plaintiff alleges that Defendants misrepresented that: they controlled an asset worth $4,200,000.00 even though the purchase price of the land was only worth $1,450,000.00, ECF No. [94] at 2; Firer and Gelman would each contribute $840,000.00 to Star Development Ltd., which they had no intention of doing, ECF No. [94] at 2; and that they would make all necessary efforts to participate in Grenada's Citizen By Investment (CBI) program, which they also had no intention of doing. *Id.* Plaintiff alleges that each of these misrepresentations altered the mix of material information such that Plaintiff would not have invested in the project had he known the truth. *See* ECF No. [26] ¶¶ 20–22, 25. Because these remaining allegations are disputed, Plaintiff argues that summary judgment is improper.

Defendants are not entitled to summary judgment on a "portion" of a count. It is well settled that summary judgment is appropriate where there is "no genuine issue as to *any* material fact [such] that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (emphasis added); *see also* FED R. CIV. P. 56. A "partial" summary judgment refers not to individual facts or parts of a count, but rather to one or some (but not all) counts of a complaint. As Plaintiff correctly notes, his claims are based on multiple misrepresentations such that the removal of this one allegation would not defeat the counts. Indeed, Defendants do not assert that *no* genuine issues of material fact exist as to these counts—which is the proper summary judgment standard—but rather that *one* fact is now undisputed. That one material fact is now undisputed does not warrant summary judgment on any count as the counts rely on other disputed facts. As such, Defendants' request for summary judgment on this ground should be **DENIED**.

### B. Counts I And II Constitute An Impermissible Extraterritorial Application Of U.S. Securities Laws.

Defendants argue that Plaintiff's securities claims, Counts I, II, and III, constitute an impermissible extraterritorial application of the law, and summary judgment for Defendants on those claims is appropriate. ECF No. [89] at 4–8. Defendants argue, relying on *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) and *Quail Cruises Ship Mgmt. Ltd. v. Agencia de Viagens CVC Tur Limitada*, 645 F.3d 1305 (11th Cir. 2011), that given that the securities at issue are not listed on a domestic exchange, the Court must look to whether and where a transfer of title took place to determine whether the transaction was domestic. Defendants argue that there was never a transfer of title, much less one in the United States. In addition, Defendants note that if there had been a transfer, the transfer would have occurred in Grenada. *Id.* at 7.

Plaintiff counters that the transaction was in fact domestic. ECF No. [94] at 7–10. Plaintiff urges the Court to disregard the "transfer-of-title" test and instead apply the "irrevocable liability"

7

test created by the Second Circuit in *Absolute Activist Value Fund Ltd. v. Ficeto*, 677 F.3d 60 (2d. Cir. 2012). *Id.* at 8. Plaintiff argues that pursuant to the "irrevocable liability" test, other factors should be considered to determine where the transfer of title occurred. *Id.* at 8–9. Specifically, Plaintiff bases his assertion of domesticity on the fact that the alleged misrepresentations were made in the United States, that he signed the Operating Agreement for Star Development Ltd. in the United States, and that the check was delivered to and cashed by Defendants in the United States. *Id.*

The undersigned will first address the argument as it relates to the federal securities claims, Counts I and II. A claim under Section 10(b) of the Exchange Act carries a presumption against extraterritoriality. *Morrison*, 561 U.S. 247, 261–62. Indeed, claims may be brought under the Exchange Act only as to "transactions in securities listed on domestic exchanges, and domestic transactions in other securities." *Id.* at 267. There is no dispute that the Star Development Ltd. shares were not listed on a domestic stock exchange, therefore, the only issue is whether there was a transfer of title in the United States. Indeed, the Court is guided by both the Supreme Court's guidance in *Morrison*, as well as the Eleventh Circuit's holding in *Quail Cruises*, which require that transfer of title have taken place in the United States in order for the U.S. securities laws to apply. *See Sturmanskie LLC v. Picturemaxx Ag,* No. 21-cv-21091, 2022 WL 3030451, at *10 (S.D. Fla. Aug. 1, 2022) ("Given that this Court is bound by Eleventh Circuit precedent, Plaintiff must allege that the 'transfer of title' did take place in Florida—the intended transfer is not enough.").

Although Plaintiff argues that this Court should apply the "irrevocable liability" test formulated by the Second Circuit to determine where the sale of securities occurred, Defendants correctly note that the Eleventh Circuit has explicitly adopted the "transfer-of-title" test. Plaintiff cites to one decision from the Northern District of Florida and two decisions from the Southern District of Florida for the proposition that this Court is free to disregard the "transfer-of-title" test

8

and substitute it for the "irrevocable liability" test. ECF No. [94] at 8–9; *Acerra v. Trulieve Cannabis Corp.*, No. 20-cv-186-RH-MJF, 2021 WL 1269919, at *2–3 (N.D. Fla. Mar. 18, 2021) (dismissing amended complaint where plaintiffs failed to allege facts showing a domestic securities transaction); *Quantum Capital, LLC v. Banco de los Trabajadores*, No. 14-cv-23193, 2015 WL 12259226, at *13 (S.D. Fla. Dec. 22, 2015) (granting summary judgment for the plaintiff on affirmative defense of violation of federal securities laws where the defendants failed to show that a securities transaction occurred in the United States); *SEC v. Berbel*, No. 17-cv-23572, 2018 WL 1135659, at *3 (S.D. Fla. Feb. 27, 2018) (denying motion to dismiss where complaint contained sufficient allegations of domesticity to support federal securities law claim). However, none of Plaintiff's authorities abrogate the "transfer-of-title" test as applied by the Eleventh Circuit in *Quail Cruises*. Rather, these cases, which are not binding on the Court, simply reference both tests and then do not make clear which is controlling for purposes of the subsequent analysis. Because this Court is bound by the Eleventh Circuit precedent, the Court will adopt the "transfer-of-title" test in reviewing the matter at hand.

While Plaintiff's Amended Complaint withstood this argument at the motion to dismiss stage, *see* ECF Nos. [31], [74], the undisputed facts now show that there was no transfer of title. Indeed, it is undisputed that no transfer of title occurred in the United States because no transfer of title occurred *at all*. ECF Nos. [88] ¶ 24–27; [93] ¶ 24–27. Plaintiff, by his own admission, never received any shares of Star Development Ltd. or any Certificate of New Member. *Id.* His argument that the check was tendered in the United States and that he signed the Operating Agreement in the United States are not sufficient because those acts did not serve to transfer any title. Indeed, even the misrepresentations he alleges are not sufficient because no transfer of title took place. Moreover, the undisputed facts support the conclusion that the transfer of title, had it occurred, would have been in Grenada. *See* ECF Nos. [88] ¶ 8, 21, 23; [93] ¶ 8, 21, 23. Plaintiff

9

concedes that he needed the Alien Landholding License in order to receive title, a process that he abandoned (albeit because he alleges he uncovered the fraud). ECF No. [93] ¶ 65.[2]

Because there was no transfer of title in the United States, an action under the federal securities laws cannot lie. Therefore, summary judgment for Defendants on Counts I and II on this ground should be **GRANTED**.

### C. Defendants Are Not Entitled To Summary Judgment On Count III Because It Is Disputed Whether The Sale Occurred Entirely Outside Of Florida For Purposes of the Florida Test.

The remaining securities claim is Count III for violation of the Florida Securities Investor Protection Act, Fla. Stat. §§ 517.011, et seq. ("FSIPA"). While Florida courts look to interpretations of federal securities laws as guidance for interpreting the FSIPA, the statutes do not have a perfectly identical application and reach. ECF No. [89] at 9; *see E.F. Hutton & Co., Inc. v. Rousseff*, 537 So. 2d 978, 981 (Fla. 1989) (comparing federal Rule 10b-5 with FSIPA and noting that the federal and state law are vastly different). Indeed, courts in this District, as well as Florida state courts, have applied a different analysis than the "transfer-of-title" test in assessing whether a sale occurred in Florida. Specifically, in applying the state statute the Court should look at whether the sale occurred *entirely* outside the state of Florida. If the answer is yes, then the FSIPA cannot apply. However, if all or part of the sale did occur in Florida, the FSIPA applies. *See, e.g., HCM High Yield Opportunity Fund, LP v. Skandinaviska Enskilda Banken AB*, No. 99-cv-1350,

---

[2] Plaintiff also attempts to analogize the instant facts to case law regarding "investment contracts" and "rights to purchase securities," to overcome the presumption of extraterritoriality. ECF No. [94] at 8. Plaintiff's case law, however, is not applicable here. This case involves a sale of company shares that was never completed—not an investment or option contract. Additionally, the cases make no mention of extraterritoriality in their analyses. *See Grippo v. Perazzo*, 357 F.3d 1218, 1223 (11th Cir. 2004) (holding that a situation where a "broker who accepts payment for securities that he never intends to deliver" can be considered "in connection with" the purchase or sale of securities, without discussing extraterritoriality); *Wharf Holdings Ltd. v. United Int'l Holdings Ltd.*, 532 U.S. 588 (2001) (holding that an "option" to purchase stock can qualify as a security under § 10(b) whether or not it was exercised).

2001 WL 36186526, at *22 (S.D. Fla. Dec. 14, 2001) ("it is presumed that a state's securities act do not apply when the sale of the security occurred *entirely* in another state."); *Allen v. Oakbrook Sec. Corp.*, 763 So. 2d 1099 (Fla. 4th DCA 1999) (affirming order granting motion to dismiss and applying, as an issue of first impression in Florida, the test of whether the sale occurred *entirely* outside of Florida).

A failure to transfer title is not necessarily fatal to the FSIPA claim. In determining whether the sale occurred within Florida, courts look to various aspects of the sale and not only the transfer of title. *See HCM High Yield Opportunity Fund, LP,* 2001 WL 36186526, at *22 (applying FSIA where bonds were issued by a corporation in Florida, the offering memorandum was sent to Florida, and the purchase occurred in Florida). Because Defendants have failed to discuss the FSIPA claim under the applicable standards, the undersigned recommends that summary judgment on Count III should be **DENIED**.

### D. Defendants Are Not Entitled To Summary Judgment On Counts I–IV For Failure To Show Damages Or Loss Causation Because The Surrounding Facts Are Disputed.

Finally, Defendants argue that they are entitled to summary judgment on all counts because Plaintiff cannot demonstrate damages or loss causation on any count. Defendants assert: (1) the alleged $840,000.00 loan from Pinnacle cannot serve as the basis for damages because it is unenforceable; (2) Plaintiff never received the shares in Star Development Ltd. and therefore cannot suffer any loss based on the value of the shares or dilution of shares; and (3) Plaintiff cannot establish loss causation because any purported losses to Plaintiff were due to a voluntary cessation of the Alien Landholding License application and not to any misstatements by Defendants.

Plaintiff maintains that he has demonstrated damages and loss causation on all counts. Plaintiff asserts: (1) the $840,000.00 loan from Pinnacle is enforceable and constitutes damages to

Plaintiff; and (2) Plaintiff has established loss causation based on Defendants' fraudulent actions and misrepresentations related to the shares of Star Development Ltd.

All of Plaintiff's claims require a showing of damages. On Counts I and II for violation of federal securities laws, Plaintiff must show both economic loss and loss causation. *Meyer v. Greene*, 710 F.3d 1189, 1194 (11th Cir. 2013) (citations omitted). Loss causation is "a causal connection between the material misrepresentation and the loss." *Id.* On Count III for violation of the FSIPA, Plaintiff must show "that the untruth [*i.e.,* misrepresentation] was the direct proximate cause of the loss." *Compania de Elaborados de Cafe v. Cardinal Cap. Mgmt., Inc.*, 401 F. Supp. 2d 1270, 1280 (S.D. Fla. 2003). On Count IV for fraudulent misrepresentation, Plaintiff must show "consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (emphasis omitted).

Defendants first argue that the $840,000.00 loan from Pinnacle to Goldstein is illegal and thereby unenforceable. ECF No. [89] at 12–13. Under Florida law, a court cannot enforce an illegal contract. *See Neiman v. Provident Life & Accident Ins. Co.*, 217 F. Supp. 2d 1281, 1286 (S.D. Fla. 2002); *Katz v. Woltin*, 765 So. 2d 279, 280 (Fla. 4th DCA 2000). Defendants assert that the loan violates Florida Statute § 607.0704, which governs actions by shareholders of a company without a meeting. *Id.* Defendants' argument is cursory, simply stating that Oleksandr Yelizarov, the former President of Pinnacle, orally approved the loan to Plaintiff and such approval is improper without shareholder consent, thereby making the loan illegal. *Id.* Plaintiff counters that Defendants misconstrue the statute, and there is no requirement that corporate loans always require shareholder approval. ECF No. [94] at 13.

Defendants' reliance on various authorities for the proposition that the Pinnacle loan is illegal contain entirely distinct facts that are not applicable in the instant case. *See* ECF No. [89] at 12; *Neiman*, 217 F. Supp. 2d at 1286 (court declined to enforce disability benefit insurance

12

contract where individual was illegally practicing law and sought compensation for that activity); *I.U.B.A.C. Local Union No. 31 v. Anastasi Bros. Corp.*, 600 F. Supp. 92, 94 (S.D. Fla. 1984) (court declined to rule on legality of contract where clause may have violated a collective bargaining agreement); *Fentriss v. Gateway Bank FSB*, No. 15-cv-2675-T-23MAP, 2018 WL 1493232, at *8 (M.D. Fla. Mar. 27, 2018) (discussing whether a policy of substituting loans would be an illegal contract if hypothetically true); *Katz*, 765 So. 2d at 280 (agreement to sell stock violated Florida law because buyer was legally prohibited from receiving the stock and owning a liquor license). Defendants cite to no authority in the record or otherwise to suggest that Mr. Yelizarov was required to obtain shareholder approval prior to approving any loans from the company, and Florida Statute § 607.0704 does not require shareholder approval for every corporate loan. Thus, the oral loan cannot be presumed illegal.

Next, Defendants argue that the Pinnacle loan is illusory and thus unenforceable. ECF No. [89] at 12–13. "Under Florida law, an agreement between parties is unenforceable if the terms of the agreement 'are so vague, indefinite, uncertain and incomplete, that it is impossible to ascertain the intent of the parties thereto.'" *Senter v. JPMorgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339, 1350 (S.D. Fla. 2011) (quoting *Brown v. Dobry*, 311 So. 2d 159, 160 (Fla. 2d DCA 1975)). Defendants argue that the loan is illusory because there is no date for repayment of the loan and the loan has yet to be repaid. ECF No. [89] at 13. Additionally, Defendants assert that the lack of documentation showing the terms of the Pinnacle loan makes it indefinite and illusory. *Id.* Plaintiff counters that the check itself serves as evidence of some material terms of the loan (*i.e.,* lender, amount, and purpose of funds) and the remainder of the terms were agreed to orally with Mr. Yelizarov, who held the position of President of Pinnacle at the time. ECF No. [93] ¶¶ 16, 47–51. Plaintiff also asserts that the lack of documentation is inapposite because there is no requirement that this type of loan be in writing. ECF No. [94] at 11.

Florida law recognizes oral loan agreements as valid, provided the oral loan complies with the standard requirements for contracts. *See Bell v. Bailey*, 639 So. 2d 1063, 1064 (Fla. 3d DCA 1994) ("It is undisputed that the defendants were required by the oral loan agreement to repay the loan within thirty (30) days after the loan was made, plus $900."); *Marshall v. Smith*, 714 So. 2d 669 (Fla. 4th DCA 1998) (reversing summary judgment for repayment on an oral loan agreement and discussing material terms). The Florida statute of frauds requires agreements to be in writing only in specific circumstances, none of which apply in this situation. FLA. STAT. § 725.01, *et seq*.

Summary judgment is not proper because the facts surrounding the Pinnacle loan remain disputed. Plaintiff contends that the check itself is evidence of the loan agreement, while Defendants maintain that it is not. However, under the statute of frauds, the agreement is not required to be in writing and can be entirely oral. Therefore, Plaintiff's testimony, as both the corporate representative of Pinnacle and individually, that an oral loan agreement existed between Plaintiff and Pinnacle (by way of the former President Oleksandr Yelizarov) and Plaintiff's testimony of the terms of the same is sufficient to defeat summary judgment. *See* ECF Nos. [88] ¶ 16; [93] ¶ 16, 47–51; [97] ¶ 47–51.

While it is undisputed that Plaintiff never received the shares of Star Development, it is disputed why that occurred. Defendants argue that it was purely a voluntary action by Plaintiff to not obtain the required Alien Landholding License to receive the shares. Plaintiff disputes that assertion and maintains that the reason he stopped the application process was because he became aware of Defendants' fraud. However, the fact that Plaintiff did not receive shares of Star Development is not at the heart of Plaintiff's damages claimed, but rather the fact that he allegedly incurred a liability of $840,000.00 plus 12% interest due to the fact that Defendants made misrepresentations about material aspects of the Star Development project and its value. Such an assertion may establish loss causation if the facts were found to be true at trial. Because the facts

14

surrounding the damages issues remain in dispute, summary judgment should be **DENIED** on this ground.

IV. **CONCLUSION**

As set forth above, the undersigned **RECOMMENDS** that:

1. Defendants' Motion for Summary Judgment be **GRANTED** as to Counts I and II on the ground that they exert an impermissible extraterritorial application of the federal securities laws.

2. Defendants' Motion for Summary Judgment be **DENIED** as to the remaining Counts III and IV on all grounds.[3]

V. **OBJECTIONS**

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Court Judge for the Southern District of Florida, within **SEVEN (7) DAYS** of being served with a copy of this Report and Recommendation. Any request for an extension of this deadline must be made within three (3) calendar days from the date of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on November 16, 2022.

_____
JACQUELINE BECERRA
UNITED STATES MAGISTRATE JUDGE

---

[3] The undersigned notes that if the Report and Recommendation is adopted, the remaining counts in the Amended Complaint would be Count III for violation of the FSIPA and Count IV for fraudulent misrepresentation, as well as Defendants' Amended Counterclaims for breach of oral contract and tortious interference with business relationships—all state law claims.